

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.   04-CV-0245 (RPM-BNB)

TYNIA JOHNSON, a resident of Boulder County, Colorado, and
PATRICIA SAINT CYR, a resident of Orleans Parish, Louisiana,

      Plaintiffs,

v.

BOULDER COUNTY, a Political Division of the State of Colorado, by and through its
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOULDER, COLORADO,
PAUL DANISH,
RONALD K. STEWART,
JANA MENDEZ, and
TOM MAYER,

      Defendants.

---

## SCHEDULING ORDER

---

## 1. DATE OF CONFERENCE

## AND APPEARANCES OF COUNSEL AND *PRO SE* PARTIES

The Continued Scheduling Conference in this matter was held before Judge Richard P. Matsch

on July 1, 2005 at 4:00 p.m. at the Byron White Courthouse, 1823 Stout St., Denver, Colorado.

The following appeared as counsel on behalf of the parties:

John W. McKendree, Esq.
LAW OFFICES OF JOHN W. McKENDREE
1244 Grant Street

1

Case No. 1:04-cv-00245-RPM   Document 84-8   filed 03/13/06   USDC Colorado   pg
2 of 14
Case 1:04-cv-00245-RPM   Document 56   Filed 07/01/2005   Page 2 of 14

Denver CO 80203
DC Box 23
(303) 861-8906
Counsel for Plaintiffs Tynia Johnson and Patricia Saint Cyr

**and**

David Hughes, Esq.
Deputy County Attorney
Andrew Ross Macdonald, Esq.
Assistant Boulder County Attorney
PO BOX 471
Boulder, CO 80306
(303) 441-3190

Attorney for Defendants Boulder County, a Political Division of the State of Colorado, by and

through its Board of County Commissioners of the County of Boulder, Colorado, Paul Danish,

Ronald K. Stewart, Jana Mendez, Tom Mayer, and Dave Webster.

## 2. STATEMENT OF CLAIMS AND DEFENSES

a.    *Plaintiff(s):*

Plaintiffs purchased real property located in unincorporated Boulder County having a

street address of 12416 Flagg Drive, Lafayette, Colorado 80026 (hereinafter, "Flagg Drive

Property"). Plaintiffs purchased the Flagg Drive Property in October 1999 for $325,000. The

property is zoned Agricultural (A) in accordance with Section 4-102 of the Boulder County Land

Use Code (hereinafter, "Land Use Code"). On October 2, 1999, close to the time of purchase,

the property was appraised at $392,505. On November 17, 2000, the property was appraised at

$424,422. Since Defendant Webster's classification of the Flagg Drive Property as partially

being in a floodway (which is not recognized by FEMA or First American Title Insurance), the

property has lost most of its marketable value.

Plaintiffs' intended use of the Flagg Drive property at the time of purchase was primarily

2

as a kennel with some ancillary dog grooming services offered. At the time of purchase of the property, several new regulations regarding kennels were being considered, although they were not yet in place. One such regulation required either a 300-foot setback or buffering that would mitigate the sound of barking dogs to the same extent as a 300-foot setback. In order to comply with the proposed regulations, Plaintiff Johnson began to construct an appropriate fence on her property.

In June of 2000, Plaintiff Johnson began Special Use Review proceedings for the Flagg Drive property. Plaintiff Johnson took the process so seriously that she was eventually asked to stop asking questions of County employees. Additionally, in an effort to comply with the County's regulations, Plaintiff Johnson hired a land use attorney to help her with the process.

Upon completing her Special Use Review packet in 2001, Plaintiff Johnson's application was not addressed for quite some time. Once addressed, the Board of Commissioners initially said it would deny Plaintiff Johnson's Special Use Review application altogether. Only after citizens complained at a public meeting about racism did the Board of Commissioners decide to conditionally approve the application. That conditional approval was such that Plaintiffs could not realistically operate their kennel.

One of the conditions in Plaintiff Johnson's approval was the construction of a fence to mitigate sound of animals. In 2002, however, Defendant Webster arbitrarily changed the classification of part of Plaintiffs' property as being in a floodway. While a floodway is defined by Defendant County as "that portion of the floodplain with the greatest depth of inundation and the highest velocities," FEMA did not classify Plaintiffs' property as being a special risk area. In fact, as recent as 2005, the FIRM maps available to the public for viewing at Defendant County do not note Defendant Webster's alleged floodway.

3

Case No. 1:04-cv-00245-RPM    Document 84-8    filed 03/13/06    USDC Colorado    pg
4 of 14
Case 1:04-cv-00245-RPM    Document 56    Filed 07/01/2005    Page 4 of 14

Between 1976 (which is the year of the map on which Defendant Webster relied for his determination that Plaintiffs' land is partly in a floodway) and 2004, approximately 33 building/construction permits were issued in Defendant Webster's floodway. The issuance of such permits was not supposed to be allowed.

Because of the sudden floodway designation, Plaintiff Johnson could never get approval for any fence. In fact, Defendant Webster said he would never approve any fence. Without a fence, Plaintiff Johnson could never operate her conditionally-approved kennel. As a result, Plaintiffs lost their land to foreclosure.

*Plaintiffs' Claims:*

1. Violation of Due Process and Denial of Equal Protection according to 42 U.S.C. § 1983 (asserted against all Defendants).

2. Conspiracy to deprive Plaintiffs of their civil rights in violation of 42 U.S.C. § 1985 (asserted against Defendant Webster).

3. Action for neglect to prevent in violation of 42 U.S.C. § 1986 (asserted against the Boulder County Commissioners).

   b. *Defendant(s):*

   1. Defendants (the "County") filed a Motion to Dismiss Amended Complaint on May 16, 2005. Plaintiffs' Amended Complaint should be dismissed for the following reasons:

      a. Plaintiffs' claims are not ripe because the County has not reached a final decision on the possible use of the Property. Defendants presented only one application to the County regarding their proposed kennel use, and that application was approved by the County, with certain conditions. Nor did Plaintiffs request any modifications to the conditions of

4

Case No. 1:04-cv-00245-RPM    Document 84-8    filed 03/13/06    USDC Colorado    pg
5 of 14
Case 1:04-cv-00245-RPM    Document 56    Filed 07/01/2005    Page 5 of 14

approval. In addition, the Plaintiffs did not attempt to have the floodplain/floodway designation on their property amended by appealing to the Colorado Water Conservation Board or the Federal Emergency Management Agency.

        b.      Plaintiffs' claims are unripe because Plaintiffs failed to pursue the state law remedies available to them before filing this lawsuit. Specifically, Plaintiffs could have appealed the conditions the Board of County Commissioners placed on the approval of the kennel by filing a C.R.C.P. 106(a)(4) action. In addition, Plaintiffs could have appealed Defendant Webster's determination regarding the fence to the county board of adjustment. Plaintiffs have also failed to apply for a conditional letter for map amendment from FEMA.

        c.      Plaintiffs' §§ 1983, 1985 and 1986 claims against the named defendants in their individual capacities fail because the implementation and administration of county floodplain regulations arise from federal mandates and not from a "custom or policy" of the County.

        d.      Plaintiffs' substantive due process claim is not actionable because the right to earn a living and the right of Ms. Johnson to use her property as intended are not fundamental rights that can be the basis of a substantive due process claim.

        e.      Plaintiffs have failed to allege facts to support a failure to train, failure to hire, failure to supervise, for failure to properly hire theory of municipal liability.

        f.      Plaintiffs' substantive due process claim should also fail because the Plaintiffs have failed to show that they have a protected property or liberty interest that would entitle them to operate a kennel on their property or to operate their business free of the conditions placed on it by the Board of County Commissioners. In addition, Plaintiffs' do not have a protected property right to "earn a living".

5

Case No. 1:04-cv-00245-RPM    Document 84-8    filed 03/13/06    USDC Colorado    pg
6 of 14
Case 1:04-cv-00245-RPM       Document 56       Filed 07/01/2005       Page 6 of 14

2.      The County filed a counterclaim under Fed.R.Civ.P. 13(a) for breach of contract and to collect money owed under the terms of an Agreement entered into by Plaintiffs for payment of fees in conjunction with their application for Special Use Review for their kennel. Plaintiffs admitted the allegations stated in the counterclaim, but asserted the following defenses: fraud in the inducement, impossibility of performance, prevention of performance by defendants to original lawsuit, and breach of implied covenant of good faith and fair dealing.

3.      The County reserves the right to raise affirmative defenses should an Answer be necessary in this case.

### 3. UNDISPUTED FACTS

1. Plaintiffs purchased the property located at 12416 Flagg Drive in October, 1999.

2. The property located at 12416 Flagg Drive is zoned Agricultural under the Boulder County Land Use Code.

3. On June 2, 2000, Ms. Johnson received notice from Boulder County that her kennel operation was in violation of County zoning regulations.

4. Ms. Johnson continued to operate the business and, in July of 2001, the County initiated a civil action for the zoning violations.

5. The zoning enforcement action was filed as Case No. 2001-C-3544 in County Court, Boulder County, Colorado.

6. On February 20, 2002, Ms. Johnson and the County reached a stipulation in the zoning enforcement action, which resolved all matters pending before the Court. The Court approved the Stipulation.

7. The terms of the Stipulation were: (1) Ms. Johnson pled no contest to the zoning violation alleged in the Complaint therein and agreed to pay a $30 fine to Boulder County

6

because of such violation; (2) Ms. Johnson agreed not to operate her kennel facility until the required Land Use Department/Board of County Commissioners' hearings had been completed on her application for approval of the kennel; and (3) Ms. Johnson agreed to complete the Boulder County Land Use application and hearing process concerning the kennel.

8. On July 31, 2001, Plaintiffs applied for Special Use Review/Site Specific Development Plan for a kennel with more than 12 dogs or cats on the property.

9. On October 12, 2000, Article 4-503(F) of the Boulder County Land Use Code was amended to require a kennel with eight to 12 dogs or cats to keep the animals "a minimum of 100 feet from any property line or other mitigating circumstance exists or may be created which has the same or better mitigating effect." The article was also amended to require a kennel with more than 12 dogs or cats to keep the animals "a minimum of 300 feet from any property line or other mitigating circumstance exists or may be created which has the same or better mitigating effect."

10. Boulder County passed Resolution No. 2002-51, conditionally approving Boulder County Land Use Docket #SU-01-12 ("Hallman House Kennel SU/SSDP") on May 14, 2002 following public hearings held May 7, 2002 and May 14, 2002.

11. The Board of County Commissioners approved the application with conditions including: limitations on the number of animals on the site at various times, allowing grooming only for the number of animals on site, installation of fencing and landscaping for noise mitigation, and obtaining the required building permits for work at the property. The applicants were also required to submit a Development Agreement demonstrating

7

Case No. 1:04-cv-00245-RPM   Document 84-8   filed 03/13/06   USDC Colorado   pg
8 of 14
Case 1:04-cv-00245-RPM   Document 56   Filed 07/01/2005   Page 8 of 14

compliance with the conditions of the permit to the Land Use department for approval prior to commencing the kennel use approved by the Board.

12. Plaintiffs did not appeal the conditions of the Board of County Commissioners placed on their approval of Land Use Docket #SU-01-12 to Boulder District Court.

13. Plaintiffs did not apply to the Federal Emergency Management Agency ("FEMA") for a letter of map revision or conditional letter of map amendment on the property.

14. Plaintiffs did not seek to amend the floodplain designation through the Colorado Water Conservation Board.

15. Tynia Johnson is enjoined from operating a pet facility in the State of Colorado pursuant to a preliminary injunction issued on November 19, 2004 in Case No. 2004 CV 1328, District Court, County of Boulder, Colorado, *Donald Ament, Commissioner of Agriculture of the State of Colorado v. Tynia Johnson, dba Hallman House.*

16. Plaintiffs no longer own the property located at 12416 Flagg Drive.

### 4. COMPUTATION OF DAMAGES

a.     *Plaintiff(s)*

Plaintiff does hereby state that the claimed damages are equal to or in excess of $1,000,000 and the method of calculating the damages is Plaintiff Johnson's estimate at this time.

Total Economic Losses                                     $495,000.00

Emotional Damages
Humiliation/Loss of Self Esteem                    $150,000.00
Pain and Suffering                                         $75,000.00
Emotional Distress                                         $600,000.00
Loss of Enjoyment of Life                              $110,000.00
Damage to Reputation                                   $152,000.00

Total Emotional Damages:                            $1.087,000.00

8

Case No. 1:04-cv-00245-RPM    Document 84-8    filed 03/13/06    USDC Colorado    pg
9 of 14
Case 1:04-cv-00245-RPM    Document 56    Filed 07/01/2005    Page 9 of 14

*b.*      *Defendant(s)*

Defendants' claim that Plaintiffs' failed to pay fees in the amount of $2,408.24 pursuant
to their "Agreement for Payment of Land Use Dept. applications Fee and for Processing
of Application in Accordance with the Boulder County Land Use Code" entered in to on
or about July 31, 2001.

## 5. REPORT OF PRECONFERENCE DISCOVERY AND

## MEETING UNDER FED. R. CIV. P. 26(f)

a.      The Rule 26(f) meetings were held on February 10, 2005 and March 28, 2005.

b.      Names of each participant and party he/she represented: Kelly Rees represented

Plaintiffs and Andrew Ross Macdonald represented Defendants.

c.      Defendants placed their Fed.R.Civ.P.26(a)(1) Disclosures in the U.S. Mail on

Friday, February 11, 2005. Plaintiffs placed their Disclosures under Fed.R.Civ.P.26(a)(1) in the

U.S. Mail on Monday, 14th of February 2005.

d.      There are no agreements to conduct informal discovery at this time.

## 7. CASE PLAN AND SCHEDULE

a.      **Deadline for Joinder of Parties and Amendment of Pleadings:**

This deadline has past.

b.      **Discovery Cut-off:**

Plaintiffs and Defendants: February 15, 2006

c.      **Dispositive Motion Deadline:**

Plaintiffs and Defendants: March 13, 2006

d.      **Expert Witness Disclosure**

1.      Plaintiffs have not made a final determination as to the need for expert

testimony at this time. Once a final decision is made, it will be promptly disclosed. Defendants may designate a floodplain engineer and/or representatives of FEMA and/or representatives of the CWCB as an expert witness.

2. Each party will be limited to two expert witnesses.

3. The parties shall designate all experts and provide opposing counsel and any *pro se* party with all information specified in Fed.R.Civ.P.26(a)(2) on or before November 21, 2005.

4. The parties shall designate all rebuttal experts and provide opposing counsel and any *pro se* party with all information specified in Fed.R.Civ.P.26(a)(2) on or before December 19, 2005.

5. Notwithstanding the provisions Fed.R.Civ.P.26(a)(2)(B), no exception to the requirements of the rule will be allowed by stipulation of the parties unless the stipulation is approved by the court.

e. **Deposition Schedule:**

The following individuals will be deposed in accordance with the schedule set forth below:

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| Tynia Johnson | To be scheduled | | 7 hours |
| Patricia Saint Cyr | To be scheduled | | 7 hours |
| Paul Danish | To be scheduled | | 7 hours |
| Ronald K Stewart | To be scheduled | | 7 hours |
| Tom Mayer | To be scheduled | | 7 hours |
| Fed.R.Civ.P.30(b)(6) representative for the Boulder County | To be scheduled | | 7 hours |

Case No. 1:04-cv-00245-RPM   Document 84-8   filed 03/13/06   USDC Colorado   pg
11 of 14
Case 1:04-cv-00245-RPM   Document 56   Filed 07/01/2005   Page 11 of 14

| Dave Webster | To be scheduled | | 7 hours |
|---|---|---|---|
| Expert Witnesses endorsed by Plaintiffs | To be scheduled | | 7 hours |

The County opposes Plaintiffs' request to depose County Commissioners Ron Stewart, Paul Danish, and Tom Mayer. The County takes the position that as elected official, the county commissioners have conducted their official business in open public sessions, and their deliberations and official actions have been duly noted in the public records of the County of Boulder. Any evidence that could be discovered in a deposition of individual Commissioners that would be admissible or reasonably calculated to lead to or aid in the discovery of admissible evidence would already be a matter of public record. Therefore, no legitimate purpose is served by subjecting individual Commissioners to depositions. On the contrary, subjecting the individual county commissioners to a deposition when their official actions and deliberations are a matter of public record constitutes annoyance, oppression, and an undue burden. The "mental process rule" prohibits inquiry into a decision-maker's mental process. *See Public Utilities Commission v. District Court*, 431 P.2d 773 (Colo. 1967).

Plaintiffs disagree with the County's assertions that no legitimate purpose is served by subjecting individual Commissioners to depositions. The motives, biases, and intent of the individual Commissioners needs to be ascertained in determining whether the County has a practice or policy of allowing for unconstitutional treatment of its citizens. *See Canton v. Harris*, 489 U.S. 378 (1989).

f.      **Interrogatory Schedule**

Plaintiffs and Defendants:

11

All the interrogatories must be mailed no later than January 13, 2006, to meet the discovery cut-off deadline of February 15, 2006.

g.    **Schedule for Request for Production of Documents**

Plaintiffs and Defendants:

All requests for production of documents must be mailed no later than January 13, 2006 to meet the discovery cut-off date of February 15, 2006.

h.    **Discovery Limitations:**

(1)    The parties are limited to ten (10) fact depositions per side.

(2)    None of the parties anticipate the need for a limitation on the length of deposition.

(3)    None of the parties propose any modifications to the presumptive number of depositions or interrogatories contained in the federal rules. Each side may take ten (10) fact depositions as provided in Fed.R.Civ.P.30(a)(A). Each side may serve twenty-five (25) interrogatories on each opposing party, including all discrete subparts, in accordance with Fed.R.Civ.P.33(a).

(4)    Each side may serve a total of forty- (40) requests for production of documents. Each side may serve a total of forty- (40) for admissions. Should parties deem additional requests for production of documents and requests for admissions necessary, they may move the Court accordingly.

(5)    Other Planning or Discovery Orders:

If the court denies Plaintiffs' motion to amend their complaint, Plaintiffs will respond to Defendants' original motion to dismiss no later than twenty (20) days after the entry of an order by the court denying their motion to amend their complaint.

**8. COMPLIANCE WITH FED. R. CIV. P. 26(F)**

12

Case No. 1:04-cv-00245-RPM    Document 84-8    filed 03/13/06    USDC Colorado    pg
13 of 14
Case 1:04-cv-00245-RPM    Document 56    Filed 07/01/2005    Page 13 of 14

The parties certify that, as required by Fed. R. Civ. P. 26(f), they have discussed the possibilities for a prompt settlement or resolution of the case by alternative dispute resolution, but were unable to reach a resolution.

### 9. AMENDMENTS TO SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED this _____ day of _____ 2005.

BY THE COURT:

Richard P. Matsch, Senior District Judge

SCHEDULING ORDER TENDERED
FOR REVIEW:


_____
Kelly A. Rees, #35685
John W. McKendree, #1209
1244 Grant Street
Denver CO 80203
DC Box 23
(303) 861-8906

Attorneys for Plaintiffs.


_____
David Hughes, #24425
Deputy County Attorney
PO Box 471
Boulder, CO 80306
(303) 441-3190

Attorney for Defendants

14