

Post Office Box 471 • Boulder, Colorado 80306

# Land Use Department

Courthouse Annex
2045 13th Street • 13th & Spruce Streets • Boulder, Colorado 80302 • (303) 441-3930

---

## BOARD OF COUNTY COMMISSIONERS

### AGENDA ITEM
### TUESDAY, MAY 7, 2002 -- 2:00 PM

### Hearing Room, Third Floor, Boulder County Courthouse

---

**PUBLIC HEARING**

**STAFF PLANNER:**    Greg Oxenfeld

**STAFF RECOMMENDATION**

<u>**Docket SU-01-12: HALLMAN HOUSE KENNEL  SU / SSDP**</u>

| | |
|---|---|
| Request: | Special Use Review / Site Specific Development Plan for a kennel with more than 12 dogs or cats. |
| Location: | At 12416 Flagg Drive, east of Lafayette and south of Baseline Road in Section 1, T1S, R69W |
| Zoning: | Agricultural (A) Floodplain Overlay (FO) |
| Applicants: | Tynia Johnson Patricia St. Cyr |
| Agent: | Ed Byrne, Attorney |

**DISCUSSION**

The applicants have submitted a Special Use Review / Site Specific Development Plan for a kennel with more than 12 dogs or cats, including outdoor holding facilities. Prior to November 2000, the County Land Use Code required that all kennels (keeping seven or more dogs or cats in any combination) with outdoor holding facilities to be setback 300 feet from all lot lines. The Land Use Code was subsequently amended in 2000. The new amendment requires kennels with more than 12 dogs or cats to be kept at a minimum of 300 feet from any property line, or that other mitigating circumstance exists or may be created which has the same or better mitigating effect. The subject property is approximately ten acres and the kennel use is proposed to be setback 55 to 103 feet from property lines and as close as 15 feet from Flagg Drive.

The applicants were originally requesting a kennel for up to 100 animals (60 dogs, 20 cats and 20 exotics), but have revised the application for a kennel with a maximum of 60 animals. The original application also included a request for a Subdivision Exemption for a boundary line adjustment with the property to the west, and a Vacation of an alley within the Irvington Townsite. The applicants have requested that the requests for a Subdivision Exemption and Vacation be withdrawn.

---

| Jana L. Mendez | Ronald K. Stewart | Paul Danish |
|---|---|---|
| County Commissioner | County Commissioner | County Commissioner |

BCLU 1104

Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12:  Staff Recommendation
BOCC – May 7, 2002
Page 2 of 11

The applicants originally acquired the subject property in October 1999 and after transferring the property to John Allen, reacquired the property in August 2000.  The Land Use Department became aware of an illegal kennel operation on the subject property last year.  The applicants were then informed by Boulder County that they were in violation of the Land Use Code.  . However, they continued to operate the kennel in violation of the Land Use Code, and the County Attorney's Office has been pursuing on-going legal action with the applicants with regards to the Code violations on the property.  The property is also non-conforming in that there are two dwellings on the east side of Flagg Drive and a mobile home on the west side of Flagg Drive. The mobile home does not have any building permits and has also been used as a dwelling.  The applicants have indicated that this mobile home is no longer being used as a residence.  Another mobile home was moved to the property subsequent to the applicant's acquisition of the subject property that is now being proposed as a kennel.  The other mobile home on the subject property is proposed as a cattery.

The existing dwelling on the southeast corner of the property is proposed to be an accessory dwelling to the kennel use with an office.  However, there will be no public or employee access to any structure on the property (due to Health Department and Building Code requirements).  The reception desk has been relocated on the south side of the house.  The other dwelling structure to the north of the accessory dwelling/office is proposed as the Exotics Building, and will no longer be used as a residence.  The original application also included a request to construct a new 600 square-foot indoor exercise building at the southeast corner of the property.  This building is no longer being proposed in this application.

The applicants are proposing six-foot cedar fences for a sound buffer to meet the requirement for a kennel with outdoor holding facilities requiring either a minimum of 300 feet from any property line or other mitigating circumstance exists or may be created which has the same or better mitigating effect.  A revised site plan provides for interior and exterior buffer fences.  The applicants note a proposed fence 55 feet from the property line will provide the functional sound buffering equivalent of the 300-foot buffer.  They also note 90 feet of separation is provided along the eastern property line and 70 feet will be provided along the southern property line.  The applicants are also proposing to put a similar wood fence along the entire property line.

## REFERRAL RESPONSES

This docket was referred out to the standard referral agencies and all adjacent property owners within 1,500 feet of the proposal area.  Referral responses are summarized below, and attached for your review.

**Boulder County Transportation Department** – Noted they needed additional information to adequately evaluate the application including a Traffic Study prepared by a registered traffic engineer, an enlarged vicinity map, a site plan that includes detailed parking lot dimensions, drainage patterns and topographical information, that Mr. Tharp's property be more clearly shown in relation to the proposed kennel, and that the actual width of Flagg Drive be clearly shown on the plans.  Subsequent to the original referral, the County Water Resources Engineer has noted that the subject property is within the Coal Creek 100-year floodway.

**BCLU 1105**
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12: Staff Recommendation
BOCC – May 7, 2002
Page 3 of 11

Based on the review of revised application and Article 4-403 of the Land Use Code, the County
Water Resources Engineer finds that a substantial amount of fencing would be placed in the
floodway and would add to the adverse impacts on flooding conditions along this reach of Coal
Creek. Therefore, the Transportation Department recommends that the subject application be
denied.

**Boulder County Parks & Open Space Department** - Notes there is an Open Corridor and
Potential Trial Alignment along Coal Creek, but note that there would be approximately 150-foot
buffer and a fence to reduce negative interactions between trail users and the kenneled dogs.
They noted the County would get the easterly eight feet of the alley vacation as the abutting
property owner. They do not find that a wildlife impact report is warranted since the additional
structures would be built in upland areas that are already disturbed, however, do recommend the
applicant contact the U.S. Fish & Wildlife Service regulating Preble's Meadow Jumping Mice.
They note that native plants and landscaping should be added to the site's facility (fencing) for an
improved appearance.

**Boulder County Health Department** - Note there is an approved septic system for 12416 Flagg
Drive, but would need an addition to the system for a commercial kennel. They note the system
at 12401 Flagg Drive is failing and is to be abandoned. They note that if public sewer is within
400 feet, the applicant must connect or be denied service. Additionally, if the well serves more
than 25 persons daily, the applicant should contact the Colorado Department of Public Health and
Environment regarding "non-community water system" requirements. They also noted air quality
and radon issues.

**Boulder County Building Safety and Inspection Services Division** - Note building permit(s)
and soils report will be required prior to the commencement of construction on any structures
associated with the proposal. They noted several building code issues that must be addressed,
including electrical wiring and the provision for handicapped accessibility in some of the existing
structures. They also noted that the 14' x 40' mobile home was moved onto the property without
proper permits.

**Boulder County Sheriff's Department** - Notes no concern from a public safety stand point, but
anticipate that the kennel may not be well received by neighbors.

**Adjacent Property Owners** - Notes the use does not meet buffer (setback) requirements and that
the use is not in harmony or compatible with the surrounding area, that it will cause significant
noise and is not adequately screened. A financial guarantee to be provided for the proposed
improvements with a time line to complete the improvements was suggested. Some indicated
that the applicant was brought into the process due to the existing zoning violations. Staff
received four responses from adjacent property owners indicating support or no conflicts with the
proposal, and about a dozen customers supporting the application.

**Boulder County Land Use Department** - Staff determined that the existing kennel was in
violation of the zoning provisions of the Boulder County Land Use Code, and that there are
existing building code violations which include health and safety hazards. The Land Use staff
has noted concerns that the kennel use is not compatible with the surrounding area and
neighborhood, and cannot support the proposal as submitted.

**BCLU 1106**
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12:  Staff Recommendation
BOCC – May 7, 2002
Page 4 of 11

Boulder County also noted that the County cannot condone the continued operation of the illegal kennel as a means to finance the improvements which staff anticipates would be conditions of approval of any Special Use aimed at making the operation legal.  Staff would also note that only one single family dwelling, occupied by the owner, operator, or manager of the business would be considered customary and incidental as part of this use.  Staff had initially suggested that if the applicants pursue this application, that they limit the kennel use to the east side and set back further off Flagg Drive, and significantly reduce the number of animals allowed on site.  (Subsequently, staff became aware that the subject property is within the Coal Creek 100-year floodway.)  Staff is concerned with the new fence that is being constructed, noting that it needed some reinforcement and should be constructed with more aesthetically pleasing materials.  Staff also suggested that landscaping be significantly increased along the proposed fence.  Staff has requested that the applicants provide a cost estimate for the proposed improvements, including electrical wiring, fencing, landscaping, and handicap accessible facilities, so that financial guarantees can be considered.

*The applicants have responded to the referral comments received by the Land Use Department. A Trip Generation Analysis prepared by Fox-Higgins Transportation Group, dated February 6, 2002 was submitted as requested by the County Transportation Department.  The report notes that the site trip generation is very low and does not adversely affect the adjacent street network.*

*The applicants have met with Dave Webster, County Water Resources Engineer, to discuss the County's Flood Plain Regulations, noting they believe the Regulations do not prohibit the wood fences proposed to contain the kennel animals and provide a sound buffer.  They note conversations with staff indicated that wood fences are preferable to chain link fences because chain link tends to capture debris, creating "dams" during flood events that can cause more downstream damage when they break loose.  Wood fences do not resist floods flows for long and after breaking loose, wood fences also break apart creating less risk of downstream damage.  The applicant's attorney also provided an analysis of flood plain engineering for the area.  The applicants have attempted to contact Pete Plage for feedback on the Preble's Meadow Jumping Mice issue, but have been unsuccessful to date.*

*A "Draft" noise analysis prepared by Hankard Environmental, dated January 7, 2002, was submitted to address the effect of the applicant's proposal to construct a fence for a buffer.  The applicants note that a proposed fence 55 feet from the property line will provide the functional sound buffering equivalent of the 300-foot buffer.  The applicant are also proposing to put a similar wood fence along the entire property line to improve sound buffering potential, but do not have the additional engineering analysis.  The applicants have reduced the maximum number of animals on site to be more compatible.  They also note that they are continuing to meet with the neighbors to address their concerns, and that most of the immediate neighbors are in support of the application.*

*The applicants have met with Iris Sherman of the County Health Department and have revised the application to meet Health Department regulations.  They have removed proposed "Building 8" from the plans, and will use paper feeding bowls and disposable bedding that will eliminate the need for washing.  They note there is no need to tie any of the boarding buildings into the existing septic system since there will be no water available at any of those buildings.*

BCLU 1107

Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12: Staff Recommendation
BOCC – May 7, 2002
Page 5 of 11

*The applicants note that "Building 1" will no longer contain the office and no public or employee access to any structure on the subject property. The reception desk will be located on the south side of the house, and the paperwork will be handled at this location, or by phone and internet access.*

CRITERIA ANALYSES

Article 4-602 of the Boulder County Land Use Code sets the standards and conditions of approval for a special review. Staff has analyzed Docket SU-01-12: Hallman House Kennel per these criteria, and finds the following:

(1)    **Complies with the minimum zoning requirements of the zoning district in which the use is to be established, and will also comply with all other applicable requirements;**

The applicants must demonstrate that the requirement that the animals are kept a minimum of 300 feet from any property line or other mitigating circumstance exists or may be created which has the same or better mitigating effect. The applicants have submitted a proposal for an interior and exterior six-foot high cedar fence. The proposed fencing would be placed in the Coal Creek 100-year floodway and is not permitted according to the provisions of Article 4-403 of the Land Use Code. Staff also finds that one of the existing mobile homes does not meet the required 35-foot front yard setback.

Staff determined that the existing kennel was in violation of the zoning provisions of the Boulder County Land Use Code, and that there were building code violations which included health and safety hazards. Boulder County also noted that the County cannot condone the continued operation of the illegal kennel as a means to finance the improvements which staff anticipates would be conditions of approval of any Special Use aimed at making the operation legal. Staff would also note that only one single family dwelling, occupied by the owner, operator, or manager of the business would be considered customary and incidental as part of this use.

Additionally, the applicants have provided a noise analysis from Hankard Environmental, Inc., dated March 19, 2002. The noise analysis notes that a site visit was conducted on January 7, 2002 and at that time there were nine dogs boarded on site. A noise level was measured, noting that approximately three to four dogs barked enthusiastically. A measurement was calculated for the sound level of the barking dogs at various distances with and without barriers. The analysis notes that a sound barrier six feet high around the present dog pen would provide more than enough mitigation to satisfy the noise ordinance and that a six-foot high sound barrier in addition to approximately 55 feet of buffer zone would have the same mitigation effect as 300 feet of buffer zone. The noise analysis states that the type and number of barking dogs as well as the sound level of the barking is not important to the calculations. While additional barking dogs would increase the noise level with the barrier, it would also increase the noise level with the barrier, it would also increase the noise level with a 300-foot buffer zone by the same amount.

**BCLU 1108**
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12:  Staff Recommendation
BOCC – May 7, 2002
Page 6 of 11

(2)     **Will be in harmony with the character of the neighborhood and compatible with the surrounding area;**

The subject property is located within the Irvington Townsite that is developed with several home sites.  Five adjacent property owners have noted concerns with the proposal including a finding that the kennel use would not be in harmony with the character of the neighborhood or compatible with the surrounding area.  Staff finds that the primary land use along Flagg Drive includes rural residential properties.  The Land Use staff also has concerns with the proposal, including a significant amount of new (privacy) fencing and two older model mobile homes which would not be compatible with the surrounding area, and cannot support the proposal as submitted.  Staff notes the kennel use would also result in an increase in traffic on Flagg Drive.

(3)     **Will be in accordance with the Boulder County Comprehensive Plan;**

The subject property is within a Major Geologic Hazard Area (shown on the Geologic Hazard & Constraint Areas Map), based on subsidence (abandoned coal mines), expansive soil or claystone, flooding, and landslides, mudslides, mudfalls and debris fans. Regarding environmental management, staff finds Goals **B.2** and **L.1** of the Boulder County Comprehensive Plan notes with regards to air, water and noise pollution, and natural hazards that inappropriate development in natural hazard areas and overall environmental degradation should be reduced as much as possible or eliminated in order to prevent potential harm to life, health and property.

Policy GE 1.01 of the Comprehensive Plan states that the county shall strongly discourage intensive uses in Major Hazard Areas.  Policy NH 4.01 states that the county should strongly discourage and strictly control land use development from locating in designated floodplains.

(4)     **Will not result in an over-intensive use of land or excessive depletion of natural resources;**

The applicants are proposing to utilize the entire ten-acre parcel for kennel use, which includes dog run areas on both sides of Flagg Drive.  Staff finds that the proposal would result in an over-intensive use of land.

(5)     **Will not have a material adverse effect on community capital improvement programs;**

No referral response received by staff indicates any conflicts with the proposal or any adverse effect on community capital improvement programs.

(6)     **Will not require a level of community facilities and services greater than that which is available;**

No service provider has responded with an identified conflict or service issue.  This would indicate that services are available and sufficient to meet the needs of the proposal.

**BCLU 1109**
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12: Staff Recommendation
BOCC – May 7, 2002
Page 7 of 11

(7)     **Will not result in undue traffic congestion or traffic hazards;**

A Trip Generation Analysis prepared by Fox Higgins Transportation Group, dated
February 6, 2002, notes that the site typically generates 10 trips per day on average, with
up to 60 trips per day at peak operations occurring over a 1-2 day period in December.
According to the Analysis, Flagg Drive currently carries 600 to 700 vehicles (both
directions) on a 24-hour basis. The Analysis notes peak occupancy of the kennel is 55 to
60 dogs, semi-peak times at the kennel occur during three-day weekend type holidays
where the number of dogs on site ranges from 30 to 45 dogs. On average, there would be
zero to 10 dogs on the site at any one time.

(8)     **Will not cause significant air, odor, water, or noise pollution;**

The applicants have committed to use paper feeding bowls and disposable bedding that
will eliminate the need for washing down other animal care areas. In Building 7 (mobile
home), the cattery, which has an existing septic system, kitty litter is used and it is
disposed of in the regular trash haul. The septic system is not used for the disposal of
animal waste or disposal of other cleaning materials. There is no water available at any
of the other boarding buildings, so there isn't a need to tie into any septic system on the
site. Based on these commitments, the County Health Department has indicated that they
would have no conflicts with the application.

(9)     **Will not require amendment to the Regional Clean Water Plan;**

This proposal will not require amendment to the Regional Clean Water Plan.

(10)    **Will be adequately landscaped, buffered, and screened;**

The applicant is proposing a significant amount of privacy fencing to provide a buffer
and screening. Staff is concerned with the new fence that is currently being constructed,
noting that it needs some reinforcement and should be constructed with more
aesthetically pleasing materials. Staff also suggested that landscaping be significantly
increased along the proposed fence. Staff has requested that the applicants provide a cost
estimate for the proposed improvements, including fencing and landscaping so that
financial guarantees can be considered. The applicants have not provided any cost
estimates for the fencing, or provided commitments for any additional landscaping along
the proposed new fence.

(11)    **Will not otherwise be detrimental to the health, safety, or welfare of the present or
future inhabitants of Boulder County;**

Staff finds that the proposal will be detrimental to the health, safety, or welfare of the
present or future inhabitants of Boulder County. While the proposed fence may be
functional for buffering sound, it is not in compliance with the County's floodplain
regulations, as a substantial amount of the fencing would be placed in the Coal Creek
100-year floodway. Article 4-403 of the Boulder County Land Use Code, states:

**BCLU 1110**
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12: Staff Recommendation
BOCC – May 7, 2002
Page 8 of 11

*No development, encroachment, use, or alteration in, on or over any part of the*
*floodway shall be permitted which alone or cumulatively with other such uses*
*would cause or result in: the occupation of permanent or temporary structures;*
*the potential of solid debris (including, but not limited to garages, storage sheds,*
*decks, fences, etc.) or waste (including, but not limited to septic systems, etc.)*
*being carried downstream; or an encroachment that would adversely effect the*
*efficiency of the floodway or change the direction of flow or cause any increase*
*in the base flood elevation.*

It can be assumed that the proposed fencing included on the new site plan will add to the
adverse impacts on flooding conditions along this reach of Coal Creek. The County
Transportation cannot support the placement or replacement of any fence in a floodway.
While the County's floodplain regulations are clear about the placement of fences in a
floodway, they are further supported by the Federal Emergency Management Agency's
(FEMA) National Flood Insurance Program (NFIP) regulations under 44 CFR. Section
60.3, paragraph (d)(3) states:

*"When the Administrator has provided data from which the community shall*
*designate its regulatory floodway, the community shall prohibit encroachments,*
*including fill, new construction, substantial improvements, and other*
*development within the adopted regulatory floodway."*

The applicants are also proposing to locate the reception desk on the south side of the
house (outdoors), and that there would be no public or employees access to any structure
on the property (due to Health Department and Building Code requirements). Staff is
concerned that this could create some zoning enforcement issues, particularly during the
times of inclement weather.

## SUMMARY / PLANNING COMMISSION

The Boulder County Land Use staff does not find that this application meets all of the necessary
criteria for a Special Use, as noted above. Staff does not find that the applicants have adequately
demonstrated that other mitigating circumstance exists or may be created which has the same or
better mitigating effect as a requirement that the animals are kept a minimum of 300 feet from
any property line. The applicants have submitted a proposal for an interior and exterior six-foot
high cedar fence. The proposed new fencing would be placed in the Coal Creek 100-year
floodway and is not permitted according to the provisions of Article 4-403 of the Land Use Code.
The applicants have not submitted a detailed fencing plan as requested by staff, including cost
estimates and additional landscaping to make the proposal more in harmony with the character of
the neighborhood.

Staff finds Goals **B.2** and **L.1** of the Boulder County Comprehensive Plan notes with regards to
air, water and noise pollution, and natural hazards that inappropriate development in natural
hazard areas and overall environmental degradation should be reduced as much as possible or
eliminated in order to prevent potential harm to life, health and property.

**BCLU 1111**
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12:  Staff Recommendation
BOCC – May 7, 2002
Page 9 of 11

Policy GE 1.01 of the Comprehensive Plan states that the county shall strongly discourage intensive uses in Major Hazard Areas.  Policy NH 4.01 states that the county should strongly discourage and strictly control land use development from locating in designated floodplains.  It can be assumed that the proposed fencing included on the new site plan will add to the adverse impacts on flooding conditions along this reach of Coal Creek.  The County Transportation cannot support the placement or replacement of any fence in a floodway.

Staff finds that the noise analysis submitted by the applicants would require that a six-foot high barrier placed on the property line, along with a second six-foot barrier at the edge of the dog pen 45 feet from the property line in order to provide the same noise mitigation as a 300-foot buffer.  The analysis notes that a six-foot high sound barrier in addition to approximately 60 feet of buffer zone would have the same mitigating effect as 300 feet of buffer zone.

The applicants are proposing to locate the reception desk on the south side of the house (outdoors), and that there would be no public or employees access to any structure on the property (due to Health Department and Building Code requirements).  Staff is concerned that this could create some zoning enforcement issues, particularly during the times of inclement weather.  Additionally, the Land Use staff has concerns with the proposal including a significant amount of new (privacy) fencing and two older model mobile homes, which would not be compatible with the surrounding area.

The Planning Commission held a public hearing regarding this request on March 20, 2002.  The applicant's attorney, Ed Byrne, noted that the application includes a unique set of circumstances and that flood issues should not be a determining factor.  He discussed the floodway boundaries and indicated that the issues raised by the County Health Department have been addressed.  Ed Byrne noted that landscaping would be difficult to keep alive and discussed other fencing in adjacent municipalities.  He summarized the noise report and showed photos of surrounding properties noting the kennel would be compatible with the surrounding area.  He also noted that the dogs would be rotated on different areas of the property, and that if the application is approved, the applicant could fund additional floodway studies.  An adjacent property owner, Patrick Vigil, noted that he has concerns with the noise created from the kennel when it was in operation and noted that he had a video that provides evidence.  He also noted concerns with traffic safety at the curve in the road.  Ed Byrne read a letter from a supporter and three other friends of the applicant spoke in support of the applicant.  Mr. Byrne also noted that the applicant would correct the early morning noise issue raised by Mr. Vigil, and that they could provide a turn-around on the property for trucks if necessary.

Dave Webster, County Water Resources Engineer, noted that the County regulations are very clear regarding uses within a floodway.  He discussed the flood situation in this area, and noted the flood study was done in 1976.  Dave Webster also noted that Article 4-409 of the Land Use Code does provide for a review of floodplain regulations by the Board of Adjustment.  Sharon Menard of the Planning Commission noted that the grounds were neat and did not hear any noise from dogs.  Staff commented that the kennel is currently not in operation.  Gerald Caplan made a motion to deny the application noting health and safety issues.  The motion was seconded by Maritza Sneddon , but she also noted a need for the use.  Lanny Pinchuck encouraged the applicant to pursue the application by addressing the issues.  Karen Berry noted the precedence of the applicant violating County regulations.

BCLU 1112
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12:  Staff Recommendation
BOCC – May 7, 2002
Page 10 of 11

The applicants have noted that two building permits have been issued in the area, including BP-00-1750 for a 2,128 square-foot manufactured home (Tharp) and BP-00-1934 for a 324 square-foot garage (Jinnette).  It appears that both of the properties do include areas within the floodway boundary, and it is possible that additional review may have been appropriate.  The applicants have also noted that a Flood Emergency Management Agency (FEMA) representative provided them with a Flood Insurance Rate Map (FIRM) for the Flagg Drive area, and noted that the June 2, 1995 FIRM #08013C0585 F does not include a federally designated flood way.  Therefore, Boulder County can elect to identify a flood way on a segment of a floodplain, which does not include a mapped federal flood way.  However, FEMA does not require counties to do so.  The applicants note that the Planning Commission indicated their opinion that the subject property appears to be a reasonable location for a kennel, but voted to recommend denial because they did not believe they had the authority to approve a fence in a flood way.  Of note, Ed Byrne is not a qualified engineer, and to date, staff has not received any new information from a qualified engineer to adequately address the flood issues raised by the County Transportation Department.

The latest fence plan submitted by the applicant shows a chain link fence along the south side of the property on the west side of Flagg Drive, and interior buffer fence setback as close as 15 feet along Flagg Drive up to 103 feet on a small segment at the east side of the property.  The proposed fencing on the property west of Flagg Drive does not appear to meet the 60-foot setback requirement of the noise analysis to have the same mitigation effect as 300 feet of buffer zone.  The majority of the fencing is located 55 feet from the property line, 35 feet from Flagg Drive, and chain line fencing is proposed on the south side.  Of note, only a 15-foot setback is proposed for the fence along the east side of Flagg Drive.  The application includes approximately 2,300 feet of wood fencing and approximately 540 feet of chain link fencing.  Staff finds the proposal includes a significant amount of wood fencing and would not be compatible with the surrounding area.  The applicant has provided examples of wood fencing along roadways adjacent to high-density residential subdivisions within municipalities.  Staff finds the Flagg Drive area is not similar to the fence examples provided by the applicant.

Section 4-503 of the Land Use Code states that kennels are permitted by special review or limited impact special review in the Agricultural zoning district.  For kennels with more than 12 dogs or cats, the animals shall be kept a minimum of 300 feet from any property line or other mitigating circumstance exists or may be created which has the same or better mitigating effect (kennels of this size require special review).  The noise analysis provided by the applicants indicates that a noise barrier (wood fence) could help with noise mitigation.  An outdoor kennel on the subject property will include barking dogs that still can be heard from adjacent properties.  Additionally, staff finds that the application does not meet the Criteria #1 where the proposed fencing would be placed in the Coal Creek 100-year floodway and is not permitted according to the provisions of Article 4-403 of the Land Use Code.  The proposed fencing within the floodway would also not be in accordance with Criteria #3 and #11 with regards to the goals and policies of the County Comprehensive Plan, and with regards to the health, safety, and welfare of the present or future inhabitants of Boulder County.  Additionally, staff finds that the proposed kennel use on the subject property would not meet Criteria #2 with regards to being in harmony with the character of the neighborhood or compatible with the surrounding area.  The applicant is not proposing any landscaping and therefore staff finds the application also does not meet Criteria #10 for adequate landscaping.  Staff also received a letter from Wendy & Dave Atkin, dated April 23, 2002, noting their concern with irresponsible business practices of the applicant based on the care of their dog.

**BCLU 1113**
Johnson/Saint Cyr v. BOCC, el al.
Case No. 04-M-245 (BNB)

SU-01-12: Staff Recommendation
BOCC – May 7, 2002
Page 11 of 11

## RECOMMENDATION

Based on the Land Use staff's analysis of the proposal with regards to the criteria in Article 4-602 of the County Land Use Code and as noted in the summary above, and based on the recommendation by the Planning Commission, staff recommends that the Board of County Commissioners <u>DENY</u>, Docket SU-01-12: Hallman House Kennel Special Use and Site Specific Development Plan.

G\LUD\LUSHARED\DKTS\12BCREC.DOC

**BCLU 1114**
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)