**Boulder County Land Use Code**

## 4-102 Agricultural (A) District

A.    Purpose: Rural areas where conservation of agricultural resources is of major value, and where residential development compatible with agricultural uses is allowed.

B.    Principal Uses Permitted

    1.    Agri-business Uses (see 4-501)
- a.  Agricultural Products Processing and Storage (S)
- b.  Agricultural Products Retail Outlet (S)
- c.  Commercial Feed Yard (S)
- d.  Custom Meat or Poultry Processing Facility (S) (I)
- e.  Keeping of Nondomestic Animals (S)

    2.    Agricultural Uses (see 4-502)
- a.  Commercial Nursery
- b.  Equestrian Center
- c.  Intensive Agricultural Uses
- d.  Open Agricultural Uses

    3.    Commercial/Business Service Uses (see 4-503)
- a.  Kennel

    4.    Forestry Uses (see 4-504)
- a.  Forestry

    5.    Industrial Uses (see 4-505)
- a.  Composting Facility (S)
- b.  Sawmill (S)
- c.  Solid Waste Disposal Site and Facility (S)
- d.  Solid Waste Transfer Facility (S)

    6.    Institutional and Uses of Community Significance (see 4-506)
- a.  Cemetery (S)
- b.  Church
- c.  Day Care Center (S)
- d.  Group Care or Foster Home (S)
- e.  Educational Facility (S) *(11/13/97)*
- f.  Use of Community Significance (S)

    7.    Lodging Uses (see 4-507)
- a.  Bed and Breakfast(S)
- b.  Campground (S)
- c.  Resort Lodge, Conference Center, or Guest Ranch (existing)(S)

    8.    Mining Uses (see 4-508)
- a.  Limited Impact Open Mining (I)
- b.  Oil and Gas Drilling and Production, on subdivided land
- c.  Oil and Gas Drilling and Production, on unsubdivided land
- d.  Open Mining (S)
- e.  Subsurface Mining (S)
- f.  Subsurface Mining of Uranium (S)

    9.    Office Uses (see 4-509)
        *None Permitted*

    10.    Recreation Uses (see 4-510)
- a.  Golf Course (S)
- b.  Livery or Horse Rental Operation (S)

                                                    **November 1, 2005**

    c.      Membership Club (S)
    d.      Outdoor Recreation, for day use (S)
    e.      Outdoor Recreation, for night use (S)
    f.      Park and/or Playfield, for day use
    g.      Park and/or Playfield, for night use (S)
    h.      Public Recreation Center (S)

11. Residential Uses (see 4-511)
    a.      Single Family Dwelling

12. Retail and Personal Service Uses (see 4-512)
    a.      Reception Halls and Community Meeting Facilities (S) *(9/5/96)*
    b.      Recycling Collection Center, Small (I) *(9/5/96)*
    c.      Veterinary Clinic, with outdoor holding facilities
    d.      Veterinary Clinic, without outdoor holding facilities

13. Transportation Uses (see 4-513)
    a.      Airport (S)
    b.      Heliport (S)
    c.      Helistop (S)
    d.      Park and Ride Facility (S)

14. Utility and Public Service Uses (see 4-514)
    a.      Central Office Building of a Telecommunication Company (R)
    b.      Community Cistern (I) *(7/17/97)*
    c.      Fire Barn (I)
    d.      Fire Station (S)
    e.      Major Facility of a Public Utility (R) (S) (L)
    f.      Public or Quasi-public Facility other than Listed (S)
    g.      Public Safety Telecommunication Facility (I)
    h.      Sewage or Water Transmission Line (R) (L)
    i.      Sewage Treatment Facility (R) (S) (L)
    j.      Telecommunications Facility, existing structure meeting height requirements
    k.      Telecommunications Facility, new structure or not meeting height requirements (S)
    l.      Utility Service Facility
    m.      Water Reservoir (R) (S) (L)
    n.      Water Tank and Treatment Facility (R) (S) (L)
    o.      Wind Powered Electric Generator (I)

15. Warehouse Uses (see 4-515)
    *None Permitted*

C. Accessory Uses Permitted (see 4-516)
1. Accessory Agricultural Retail Sales
2. Temporary Accessory Community Meeting Facility *(4/3/2001)*
3. Accessory Concrete or Asphalt Batch Plant (S) *(11/21/96)*
4. Accessory Dwelling (S)
5. Accessory Horse Keeping
6. Accessory Outside Storage
7. Accessory Structure
8. Garage sales or Occasional sales

**Boulder County Land Use Code**

    9.    Grading of more than 500 Cubic Yards **(I)**

    10.   Home Occupation

    11.   Household Pets

    12.   Noncommercial Telecommunication Site, one structure which meets setback and height requirements

    13.   Noncommercial Telecommunication Site, multiple structures and/or not meeting setback or height requirements **(I)**

    14.   Solar Energy System

**D.**    Temporary Uses Permitted (see 4-517)

    1.    Emergency Noncommercial Telecommunication Site **(A)**

    2.    Group Gathering **(A)**

    3.    Temporary Batch Plant **(A)**

    4.    Temporary Construction or Sales Office **(A)**

    5.    Temporary Dwelling Unit **(A)**

    6.    Temporary Fireworks Stand or Christmas Tree Sales Lot **(I)**

    7.    Temporary Special Use (nonconforming use under Section 4-1004(A)(2)) **(S)** *(9/4/97)*

**E.**    Lot, Building, and Structure Requirements

    1.    Minimum lot size...35 acres

    2.    Minimum setbacks

        **a.**    Front yard...35 feet

        **b.**    Side yard...7 feet

        **c.**    Rear Yard...15 feet

        **d.**    From an irrigation ditch...50 feet from the centerline of the ditch. This requirement only affects structures built after October 10, 1996. The setback may **-with County concurrence-** be reduced in accordance with a letter from the applicable ditch company establishing a different setback, but in any event shall not be less than 20 feet from the ditch centerline. *(10/10/96) (11/25/97)*

    3.    Maximum building height

        **a.**    Residential structures:

            **(i)**    On subdivided land with a final plat approved by the County prior to August 29, 1994, 35 feet unless a lower height was approved through the platting process.

            **(ii)**    On any other land, 30 feet unless, through a subdivided land approval or site plan review approval, a lower or higher height is permitted due to the unique characteristics of the particular site; in no event, however, shall any residential structure exceed 35 feet.

        **b.**    50 feet for nonresidential structures

**F.**    Additional Requirements

    1.    Animal units...Four animal units per acre without going through special review

    2.    Special review (or limited impact special review if specifically mentioned below) is required for any use which:

        **a.**    generates traffic volumes in excess of 150 average daily trips per lot, as defined by the Institute of Transportation Engineers;

            **(i)**    limited impact special review is required for any parking area which generates traffic volumes in excess of 150

average daily trips per lot, as defined by the Institute of Transportation Engineers, provided that the parking area is associated with a trail of a governmental entity on publicly acquired open space land, and that the parking area is in accordance with an open space management plan approved by the Board of County Commissioners.

**b.**     has an occupant load greater than or equal to 100 persons per lot;

**c.**     has a wastewater flow greater than or equal to 2,000 gallons per day per lot;

**d.**     has a total floor area greater than 25,000 square feet, except for agricultural uses which may have 25,000 square feet for the first 35 acres of a subject parcel size without triggering special review (in this case, limited impact special review). A parcel may have 1,800 square feet of additional floor area for every additional 5 acres of parcel size above 35 acres, without triggering limited impact special review, but only if the owner grants the County a conservation easement on the property which prohibits any division of the property which would result in a violation of this Code, and prohibits the addition of structures to the property. To exceed these square footage limitations, limited impact special review approval is required; *(7/23/98)* or

**e.**     has a second principal use which does not increase density.

**3.**     Grading involving the movement of more than 500 cubic yards of material as defined and provided in Section 4-516(H) of this Code shall go through limited impact special review.

**4.**     No parcel shall be used for more than one principal use, except for allowed agricultural uses, mining uses, or any combination thereof, or for multiple principal uses on properties that have been designated as historic landmarks by Boulder County where the Boulder County Commissioners and Historic Preservation Advisory Board determine that the multiple uses serve to better preserve the landmark. *(1/9/03)*

## 4-400 Floodplain Overlay District *(amended 10/29/02)*

### 4-401 Application and Liability

**A.**     The provisions and regulations of this section shall apply to all lands within the unincorporated area of Boulder County which are located within the Floodplain Overlay (FO) Zoning District. If a structure, lot, or other parcel of land lies partly within the FO district or the floodway, the part of such structure, lot, or parcel lying within the district or floodway shall meet all requirements for such district or floodway as set forth in this Code.

**B.**     The degree of flood protection intended to be provided by this section has been determined to be reasonable for regulatory purposes and is based on engineering and scientific methods of study. Floods of greater magnitude may occur and flood heights may be increased by man-made or natural causes, such as ice jams and bridge or culvert openings restricted by debris. This article does not imply that the areas outside floodplain area boundaries or land uses permitted within such areas will be free from flooding or flood damages or that compliance with these regulations will prevent any or all damages from flooding. Nor shall this article create a liability on the part of, or a cause of action against, the County of Boulder or any officer or employee thereof for any flood damages that may result from reliance on this article or any administrative decision.

### 4-402 Designation of Official Maps

**A.**     The following reports designate the location and boundaries of the FO district.

**1.**     That portion of the Floodplain study entitled 'Floodplain Information/Boulder Creek and South Boulder Creek (Boulder County Volume II),' August 1969, prepared for the Denver Regional Council of Governments by the Department of the Army, Omaha District, Corps of Engineers, which includes all of South Boulder Creek and Boulder Creek in the unincorporated areas west of Valley View Road and east of the Boulder City Limits.

**2.**     'Floodplain Information/Lower St. Vrain Creek (Boulder County Volume III),' June 1972, prepared for the Urban Drainage and Flood Control District/the City of Longmont/Boulder County by the U.S. Army Corps of Engineers (Omaha, Nebraska).

**3.**     'Floodplain Information Report/Lefthand Creek, Volume 1 (Mouth to Foothills Highway),' December, 1981, prepared for Boulder County, City of Longmont and the Colorado Water Conservation Board by Gingery Associates, Consulting Engineers.

**4.**     'Floodplain Information Studies/Upper Lefthand Creek, Volume II, (Foothills Highway to Peak to Peak Highway),' August, 1983, prepared for Boulder County and the Colorado Water Conservation Board by Simons, Li and Associates, Consulting Engineers.

**5.**     'Floodplain Information Report/Upper Boulder Creek and Fourmile Creek,' December, 1981, prepared for Boulder County and the Colorado Water Conservation Board by Gingery Associates, Consulting Engineers.

**6.**     'Flood Hazard Area Delineation/Lower Boulder Creek (Valley View Road to Boulder – Weld County Line),' March, 1983, prepared for Urban Drainage and Flood Control District, Colorado Water Conservation Board and Boulder County by Muller Engineering Company, Inc., Consulting Engineers.

**7.**     That portion of the floodplain study entitled, 'Flood Hazard Delineation/Boulder Creek and Dry Creek (Number Three),' June, 1975, for Urban Drainage and Flood Control District and Boulder County by Leonard

**Boulder County Land Use Code**

Rice Consulting Water Engineers, Inc., which includes Dry Creek Number Three.

8.  'Flood Hazard Analysis/Coal Creek and Rock Creek, Boulder and Weld Counties, Colorado,' October, 1976 prepared by U.S. Department of Agriculture, Soil Conservation Service in cooperation with the Colorado Water Conservation Board, Urban Drainage and Flood Control District, Coal Creek Water Users Association, Boulder County and Weld County.

9.  'Floodplain Information/Dry Creek (Number Two) Boulder County - Weld County, Colorado,' June, 1978, prepared for Boulder County, Weld County and Colorado Water Conservation Board by the Department of the Army, Omaha District, Corps of Engineers.

10.  'Floodplain Information, Flood Control and Floodplain Management Plan for St. Vrain Creek at Longmont, Colorado,' April, 1981, prepared for City of Longmont, Boulder County and the Colorado Water Conservation Board by Water Resource Consultants, Inc.

11.  'Floodplain Information and Flood Control and Drainage Plan/Dry Creek Number One,' April, 1980, prepared for Boulder County, City of Longmont and the Colorado Water Conservation Board by Water Resource Consultants.

12.  'Floodplain Information Report/St. Vrain Canyon Upstream of Lyons, Boulder County, Colorado,' October, 1978, prepared for Boulder County and the Colorado Water Conservation Board by Camp, Dresser and McKee, Inc.

13.  That portion of the study entitled, 'Floodplain Information/Big Thompson River, Loveland to the Larimer - Weld County Line, Colorado/Little Thompson River, Boulder and Larimer Counties Near Berthoud, Colorado,' June, 1977, prepared for Larimer County, Boulder County, Larimer-Weld Council of Governments and the Colorado Water Conservation Board by the Department of the Army, Omaha District, Corps of Engineers, which includes the Little Thompson River in Boulder County.

14.  'Floodplain Information, Flood Control and Floodplain Management Plan for Coal Creek at Erie, Colorado,' August, 1980, prepared for Boulder County, Weld County, and the Town of Erie and the Colorado Water Conservation Board by Water Resource Consultants.

15.  That the portion of the Floodplain study entitled 'South Boulder Creek Flood Hazard Delineation,' July 1986, prepared for the Urban Drainage and Flood Control District and Boulder County in cooperation with the Colorado Water Conservation Board, which includes South Boulder Creek from Eldorado Springs to the Colorado and Southern Railroad (C&S R.R.) crossing, approximately 1100' downstream from Arapahoe Road (S.H. 7).

B.  The maps in these reports depicting the floodplain for the base flood shall be considered the official maps for the purposes of locating the FO district and establishing those areas affected by the provisions and regulations of this Section. These maps and reports, together with all amendments, explanatory matter, technical addenda, water surface elevations, profiles, cross sections where available, and the 'Flood Insurance Study,' effective October 4, 2002, and the Flood Insurance Rate Maps of Boulder County as prepared by the Federal Emergency Management Agency are incorporated by reference into this Code. The location and boundaries of the FO district established by this Section are also incorporated into this Code, and are depicted upon the official zoning district maps.*(10/29/02)*

C.  The County Engineer shall keep copies of the reports cited in Section 4-402(A) on file and open to public inspection.

---

4-62                                                                    **November 1, 2005**

**D.**    Interpretation of Official Maps

1.    Where interpretation is needed as to the exact location of the boundaries of the FO district, the County Engineer shall make the necessary interpretation by referring, as necessary, to the engineering study upon which the maps and elevations are based, to the professional engineers who prepare the study, to the Colorado Water Conservation Board, and/or the Federal Emergency Management Agency.

2.    The base flood water surface elevations, as shown on the flood profiles and in the elevation tables, shall be the governing factor in determining accurate boundaries.

**E.**    Review and Amendment due to Physical Change

1.    In the event that significant changes occur or are proposed within the FO district, such as flood control measures, channelization, stream improvements or any other alteration or change in the watercourse, there shall be an evaluation of the boundaries of the floodplain as follows:

a.    The County Engineer, in conjunction with the Colorado Water Conservation Board and the Federal Emergency Management Agency, will study the magnitude of the apparent change and determine whether there is need for a full scale study of the boundaries with a view to possible revision.

b.    Should the Planning Commission or any person or persons, as a result of such a study or for other reasons, desire to change the boundaries of any FO district, the procedure for rezoning set forth in Section 4-1100 shall be followed.

2.    In addition, proposed boundary changes of any FO district that has been approved and incorporated into the National Flood Insurance Program shall also conform with the Federal Emergency Management Agency's map revision/amendment process.

**F.**    Amendment Due to the Incorporation of New Studies

1.    If the Colorado Water Conservation Board officially designates and approves additional floodplain reports affecting any river or creek in the unincorporated area of Boulder County, and upon review by the Federal Emergency Management Agency, the County Engineer shall review such reports and make recommendations to the Planning Commission regarding necessary amendments or additions to the boundaries of the FO district.

2.    The procedure for such amendments is set forth in Article 16 of this Code.

**4-403 Floodway**

**A.**    No development, encroachment, use, or alteration in, on or over any part of the floodway shall be permitted which alone or cumulatively with other such uses would cause or result in:

1.    the occupation of permanent or temporary structures;

2.    the development or use of overnight campgrounds;

3.    the storing or processing of materials that are buoyant, flammable, explosive, or otherwise potentially injurious to human, animal or plant life;

4.    solid waste disposal sites and central collection sewage treatment facilities;

5.    the potential of solid debris (including, but not limited to garages, storage sheds, decks, fences, etc.) or waste (including, but not limited to septic systems, etc.) being carried downstream; or

**Boulder County Land Use Code**

6.   an encroachment that would adversely effect the efficiency of the floodway or change the direction of flow or cause any increase in the base flood elevation.

**B.**   The following open uses shall be permitted within the floodway to the extent that they are not prohibited in a particular area by any underlying zoning district and only if they do not adversely affect the efficiency of the floodway, change the direction of flow or increase base flood heights:

1.   agricultural uses such as general farming, grazing of livestock and horses, truck farming, sod farming and wild crop harvesting;

2.   uses accessory to residential uses, including, but not limited to lawns, open areas, gardens, driveways, and play areas;

3.   industrial or commercial uses such as loading areas, railroad rights-of-way (but not including freight yards or switching, storage or industrial sidings), parking areas, airport landing strips, and storage yards for equipment or machinery easily moved or not subject to flood damage (excluding junkyards and solid waste disposal facilities);

4.   recreational uses not requiring permanent or temporary structures designed for human habitation;

5.   utility facilities such as dams, power plants, spillways, transmission lines, pipelines, water monitoring devices, water supply ditches, irrigation ditches and laterals;

6.   open mining; or

7.   road and highway structures.

**C.**   Any development in the floodway shall be permitted only upon application to the County Engineer and the issuance of a floodplain development permit.

### 4-404 Floodfringe

**A.**   Any use permitted by the underlying zoning regulations shall be permitted in the floodfringe, provided the use meets the floodproofing requirements of Paragraph 4-405 of this Section.

**B.**   Any development in the floodfringe shall be permitted only upon application to the County Engineer and the issuance of a floodplain development permit.

### 4-405 Floodproofing

**A.**   All insubstantial improvements where the lowest floor of the improvement is not above the flood protection elevation shall be floodproofed as follows:

1.   The improvement, including attendant and sanitary facilities, be designed so that the structure is watertight with walls substantially impermeable to the passage of water below the flood protection elevation; the structure is anchored to prevent flotation, collapse, or lateral movement of the structure; and the structure is constructed with structural components having the capability of resisting hydrostatic and hydrodynamic loads and effects of buoyancy.

2.   The improvement be certified by a Colorado Registered Professional Engineer that the floodproofing methods are adequate to withstand the flood depths, pressures, velocities, impact and uplift forces, and other factors associated with the base flood. Such certification shall also state the specific elevation (in relation to mean sea level) to which the improvements are floodproofed.

**B.**   All new construction and substantial improvements shall be anchored to prevent flotation, collapse, or lateral movement of the structure and capable of resisting the hydrostatic and hydrodynamic loads.

C.    Flood protection elevation requirements shall be as follows:

1.    New construction of any building or other structure shall have the lowest floor (including basements, garages, carports, and porches) elevated to or above the flood protection elevation.

2.    Substantial improvement of any building or other structure shall have the lowest floor of the improvement elevated to or above the flood protection elevation.

3.    All new construction and substantial improvements of any building or other structure, within areas of shallow flooding, as specifically defined by the Federal Emergency Management Agency, shall have the lowest floor (including basements, garages, carports, and porches) elevated to or above the flood protection elevation.

a.    For shallow flooding areas, the County Engineer may reduce the elevation requirement, upon evaluation of the floodplain on and around the proposed development.

b.    Such a reduction shall have the lowest floor elevated to or above the base flood elevation, or the highest established adjacent grade plus the depth of flooding number specified in feet on the Flood Insurance Rate Maps, or at least two feet above the highest established adjacent grade if no depth number is specified.

c.    Drainage improvements within a shallow flooding area, as specifically defined by the Federal Emergency Management Agency shall be constructed to allow floodwaters to flow around the perimeter of the structure in a controlled manner, without adversely impacting adjacent properties.

4.    For all new construction and substantial improvements, fully enclosed areas below the lowest floor that are subject to flooding shall be designed to automatically equalize hydrostatic flood forces on exterior walls by allowing for the entry and exit of floodwaters. Designs for meeting this requirement must either be certified by a registered professional engineer or architect or must meet or exceed the following minimum criteria:

a.    A minimum of two openings having a total net area of not less than one square inch for every square foot of enclosed area subject to flooding shall be provided;

b.    The bottom of all openings shall be no higher than one foot above grade;

c.    Openings may be equipped with screens, louvers, or other coverings or devices provided that they permit the automatic entry and exit of floodwaters.

5.    New construction and substantial improvement of any below-grade crawlspace shall:

a.    Have the interior grade elevation, that is below base flood elevation, no lower than two feet below the lowest adjacent grade;

b.    Have the height of the below-grade crawlspace measured from the interior grade of the crawlspace to the top of the foundation wall, not to exceed four feet at any point;

c.    Have an adequate drainage system that allows floodwaters to drain from the interior area of the crawlspace following a flood;

**Boulder County Land Use Code**

    **d.**    Meet the provisions of Sections 4-405(B), Anchoring; 4-405(C)(4), Openings in Enclosures Below the Lowest Floor; and 4-405(D), Other Floodproofing Requirements.

6. Unsubstantial improvements, of any building or other structure, shall either have the lowest floor of the improvement elevated to or above the flood protection elevation or shall be designed and constructed according to the requirements of Paragraph 4-405(A).

7. As built lowest floor elevations (in relation to mean sea level) for all new construction, substantial improvements, other improvements, or for new manufactured home stands, shall be certified by a Colorado Registered Professional Engineer or Colorado Registered Professional Land Surveyor. Elevation Certificates shall be submitted to the Building Division Inspector or County Engineer at the time of rough framing inspection of the improvements. Failure to submit an Elevation Certificate upon completion of the rough framing inspection will result in suspension of work until proper certification is provided.

8. The storage or processing of materials that are buoyant, flammable, explosive, or in times of flooding could be injurious to human, animal, or plant life, shall be at or above the flood protection elevation.

9. Concerning manufactured home parks, for new parks; expansions to existing parks; existing parks where the value of the repair, reconstruction, or improvement of the streets, utilities, and pads equals or exceeds 50 percent of the value of the streets, utilities and pads before the repair, reconstruction or improvement has commenced; an existing park on which a manufactured home has incurred substantial damage as the result of a flood; manufactured homes to be placed or substantially improved on sites in existing parks; and for manufactured homes not placed in a park:

    **a.**    Stands or lots shall be elevated on compacted fill or on pilings so that the lowest floor of the manufactured home will be at or above the flood protection elevation. For homes placed on pilings:

        **(i)**    lots shall be large enough to permit steps;

        **(ii)**    piling foundations shall be placed in a stable soil no more than ten feet apart; and

        **(iii)**    reinforcements shall be provided for pilings more than six feet above the ground level.

    **b.**    Adequate surface drainage shall be provided.

    **c.**    New manufactured homes shall be anchored by providing over-the-top and frame ties to ground anchors as well as the following:

        **(i)**    over-the-top ties at each of the four corners, with two additional ties per side at intermediate locations, with the exception of manufactured homes less than 50 feet long which require only one additional tie per side;

        **(ii)**    frame ties at each corner with five additional ties per side at intermediate points, with the exception of manufactured homes less than 50 feet long which require only four additional ties per side;

        **(iii)**    all components of a manufactured home anchoring system shall be capable of carrying a force of 4800 pounds; and

        **(iv)**    any additions to the manufactured home be similarly anchored.

**10.** Concerning recreational vehicles, at least one of the following provisions shall be met:

    **a.** The recreational vehicle shall be on the site for fewer than 180 consecutive days.

    **b.** The recreational vehicle shall be fully licensed and ready for highway use.

    **c.** The recreational vehicle shall meet the permit requirements and elevation and anchoring requirements for manufactured homes, in accordance with Section 4-405(B)(9) of this section.

**D.** Other Floodproofing Requirements

    **1.** New construction and substantial improvements shall be constructed with materials and utility equipment resistant to flood damage up to the flood protection elevation.

    **2.** New and replacement water supply systems shall be designed to minimize or eliminate infiltration of flood waters.

    **3.** Cutoff valves or the elimination of gravity drains below flood protection elevations in new and replacement sanitation or sewerage systems shall be used to minimize or eliminate infiltration of and discharge into flood waters.

    **4.** The location of new and replacement on-site waste disposal systems shall be done in such a manner to avoid impairment to or contamination from the systems during flooding.

    **5.** New and replacement electrical, heating, ventilation, plumbing, and air conditioning equipment and other service facilities shall be located at or above the flood protection elevation.

    **6.** New buildings or other structures shall be placed with their longitudinal axes parallel to the predicted direction of flow of flood waters or be placed so that their longitudinal axes are on lines, parallel to those of adjoining structures, to the extent consistent with other provisions of this Code. This is intended to minimize the obstruction to flow caused by a building or structure.

**4-406 Responsibilities of the County Engineer**

  **A.** The Boulder County Engineer or his designee, is responsible for the administration and implementation of the requirements of this section. Such responsibilities include, but are not limited to:

    **1.** Review floodplain development permit applications, review and make floodway/floodfringe determinations, and issue permits if the applications are in compliance with the provisions and requirements of this Section. The requirements of this Section include the approval of all necessary local, state, or federal permits.

    **2.** Obtain, review, and reasonably utilize any base flood water surface elevation and floodway data available from state or federal agencies, or other reliable sources.

    **3.** Obtain and maintain for public inspection copies of all floodplain reports and maps, resolutions of official floodplain map amendments, and all records pertaining to floodplain developments.

      **a.** These records include certified lowest floor elevations, elevation certificates of floodproofing methods and floodway encroachment, and records of all variance actions.

      **b.** The County Engineer shall report variances issued on an annual basis to the Federal Emergency Management Agency.

**Boulder County Land Use Code**

4. Notify adjacent communities, potentially affected property owners, and the Colorado Water Conservation Board prior to any alteration or relocation of a watercourse.

   a. This is done through the publication of a notice of such proposed alteration or relocation once in a newspaper of general circulation in Boulder County.

   b. The County Engineer shall also submit evidence of such notification to the Federal Emergency Management Agency.

5. For any alteration or relocation of a watercourse, the County Engineer shall require that maintenance of the flood carrying capacity of the altered or relocated watercourse is provided.

6. Make interpretations where needed, as to the exact location of the boundaries of the FO district where there appears to be a conflict between a mapped boundary and actual field conditions based upon an engineering study by the applicant.

7. Review and transmit recommendations to the Board of Adjustment regarding requested variances and appeals pursuant to Section 4-409.

8. Review floodplain reports approved by the Colorado Water Conservation Board and make recommendations to the Planning Commission and Board of County Commissioners regarding necessary amendments or additions to the FO district.

**4-407 Floodplain Development Permit**

A. All building permit applications shall be reviewed by the Building Division to determine whether the proposed development may be within the floodplain. If it appears to the Building Division that any proposed development may be within the floodplain, then the Building Division shall refer the application to the County Engineer for a determination on whether a floodplain development permit is required. The Building Division shall not issue a building permit when floodplain issues have been raised unless the County Engineer has issued a floodplain development permit or determined that no such permit is required.

B. Applications for floodplain development permits are to be submitted to the County Engineer and shall include the following information as applicable:

   1. A completed application form with all necessary information completed.

   2. a plan at a scale of 1' = 200' or larger, stamped by a engineer registered by the State of Colorado, which includes:

      a. the site location;

      b. a legal description of parcel;

      c. base flood limits and water surface elevations;

      d. floodway limits;

      e. channel of watercourse;

      f. existing and proposed contours or elevations at 2' intervals;

      g. existing and proposed structures, with the lowest floor elevations (including basements and garages) of each structure;

      h. proposed elevations to which structures will be floodproofed (if applicable);

      i. location and elevations of existing streets, water supply, and sanitation facilities;

j.    limits and total land area of all existing and proposed impervious surfaces, including structures; and

k.    existing water supply ditches, irrigation ditches and laterals.

3.    A typical valley cross-section showing:

a.    the channel of the watercourse;

b.    limits of floodplain adjoining each side of channel;

c.    cross-section area to be occupied by the proposed development;

d.    existing and proposed base flood water surface elevations;

4.    Specifications for construction and materials of buildings, floodproofing, filling, dredging, grading, channel improvements, storage of materials, water supply, and sanitation facilities as applicable;

5.    Description of the extent to which any water course will be altered or relocated as a result of the proposed development;

6.    For development proposed within a floodway the following information is required:

a.    A title report prepared by a licensed title insurance or abstract company containing the legal description of the subject property and identifying, listing and certifying the following:

(i)    a listing of all owners of record of the subject property;

(ii)    all owners and their addresses of real property adjacent to the subject property; and

(iii)    all owners of any surface, subsurface, or above surface estates, rights, or interests in the land adjacent to the subject property (including easements and interests in the oil, gas, mineral or water estate) or any other real property associated therewith; the nature and description of each such estate, right, or interest; and the addresses of all owners.

7.    A floodway analysis by a Colorado Registered Professional Engineer using methodology acceptable to the Federal Emergency Management Agency and according to the following guidelines:

a.    If a detailed hydraulic floodway analysis has not been performed, the responsibility for determining the floodway boundary rests with the floodplain development permit applicant. The need for a detailed hydraulic floodway analysis shall be the decision of the County Engineer.

b.    The detailed hydraulic floodway analysis shall be based on the identical hydraulic model which was used to develop the engineering study currently adopted by the Board of County Commissioners. The applicant should obtain, through the County Engineer, a copy of the input data and card deck representing the HEC-2 computer model used for their effective flood hazard study.

c.    The model must then be updated to existing hydraulic conditions to determine what surcharge levels have already been achieved by encroachments since the floodplain was established.

(i)    Alternate floodway configurations may then be analyzed based on acceptable Encroachment Methods as outlined in the current U.S. Army Corps of Engineers HEC-2 Water

---

**Boulder County Land Use Code**

Surface Profiles Users Manual' and submitted to the County Engineer for review and approval.

**(ii)** Approval will be based on demonstration that the cumulative effects of the proposed encroachment, plus the effects of encroachments since the original flood hazard area was established, does not cause more than a one foot rise in the established base flood water surface elevation.

**(iii)** At the County Engineer's discretion, where a regulatory floodway has been designated, it may not be necessary to determine the cumulative effects of existing encroachments.

**d.** Floodway boundary configurations will be examined and approved by the County Engineer. The following specific information, for the stream reach 1000 feet upstream and 1000 feet downstream from the proposed encroachment, must be submitted:

**(i)** A copy of the printout for the hydraulic computer model representing the unencroached base flood profile run for conditions existing at the time the currently effective floodplain was developed. The printout must include the full input and output listing.

**(ii)** A copy of the printout from the hydraulic computer model representing the floodway run for the proposed floodway configuration and including encroachments and other hydraulic changes within the floodplain since the currently effective floodplain was established. The printout must include the full input and output listing with all input changes from the original model highlighted.

**(iii)** A copy of the floodway data table representing data for the proposed floodway configuration.

**(iv)** A copy of the currently effective official engineering study showing the existing floodplain and the proposed floodway configuration.

**(v)** Certification from a Colorado Registered Professional Engineer that the proposed floodway configuration, in combination with current floodplain hydraulic conditions, meets established requirements when evaluated against flood elevations established for unencroached conditions when the original floodplain study was completed.

**8.** An engineering report addressing those standards set forth in Paragraph 4-407(B) of this Section.

**C.** Standards for Permit Review

**1.** In reviewing an application for a floodplain development permit, the County Engineer shall determine the specific flood hazard at the site and shall evaluate the suitability of the proposed use in relation to the flood hazard.

**2.** In addition, the County Engineer shall consider the following factors in reviewing permit applications:

**a.** the effect of the proposal upon the efficiency or capacity of the floodway;

**b.** the effect on lands upstream, downstream and in the immediate vicinity of the development including the potential danger to persons;

   c.   the effect of the proposal on the flood profile and flood heights;

   d.   the effect of the proposal on any tributaries to the main stream, drainage ditches, water supply and irrigation ditches, or any other drainage or irrigation facilities or systems;

   e.   the relationship of the proposed development to the flood management program for the area in question, including whether additional public expenditures for flood protection or prevention will be necessary;

   f.   whether the applicant would obtain an undue advantage compared to later applicants who might request a permit;

   g.   if the proposed use is for human occupancy;

   h.   the probability that materials may be swept onto other lands or downstream to the injury of others;

   i.   the susceptibility of the proposed facility and its contents to flood damage;

   j.   the safety of access to the property in times of flood for ordinary and emergency vehicles;

   k.   whether any proposed changes in a watercourse will have an environmental effect on the watercourse, including streambanks and streamside trees and vegetation;

   l.   the relationship of the proposed development to the *Boulder County Comprehensive Plan* and any applicable floodplain management programs;

   m.   whether the cumulative effect of the proposed development with other existing and anticipated uses will increase flood heights more than one foot; and

   n.   if the expected heights and velocities of the floodwaters expected at the site will adversely affect the development of surrounding property.

3.   If the County Engineer determines that the application for floodplain development permit meets the purposes and requirements of this Section, the floodplain development permit shall be issued, with the attachment of any conditions as deemed necessary to further the purposes of this Section. Such conditions may include, but are not limited to, specifications for modification of waste disposal methods and facilities, landscaping, periods of operation, operational controls, sureties, deed restriction, and adequate floodproofing.

D.   Board of Commissioners Review

1.   In the event that the County Engineer determines that a floodplain development permit application for any development in the floodway meets the applicable standards for approval, the permit will not be effective until 14 days after the date of permit issuance. *(6/29/95)*

   a.   At the time of permit approval, the County Engineer shall do the following:

      (i)   within seven days, publish a public notice of the proposed use and the permit issuance in a newspaper of general circulation in Boulder County;

      (ii)   shall transmit a copy of the notice to property owners adjacent to the property in question; and

      (iii)   forward to the Board of County Commissioners a written statement which shall include (1) the location and a description of the proposed use under the permit; (2) the

**Boulder County Land Use Code**

reasons for approval of the permit; and (3) any conditions the County Engineer placed on the issuance of the permit.

    **b.** Upon receiving the Director's statement, and before the effective date of the permit, the Board may call the permit up for review at a public hearing.

        **(i)** This hearing shall constitute a revocation of the permit.

        **(ii)** At the public hearing, the Board shall consider evidence related to the permit which may be presented by the County Engineer, the applicant, or interested members of the public.

        **(iii)** The Board shall determine whether the application meets the requirements of this article, and if it so finds, shall issue the permit, with such conditions as the deemed appropriate.

**E.** Permit Expiration, Certification Enforcement

    **1.** The County Building Official shall not issue any building permit for, nor shall the Director issue any use permit involving any building, structure, or other development within the FO district unless a floodplain development permit has been granted for the development.

    **2.** A floodplain development permit shall expire two years after the date of issuance if the permittee has not commenced construction under the permit.

    **3.** Whenever the County Engineer has personal knowledge of any violation of the provisions of this section, he shall give written notice to the violator to correct such violation within thirty days after the date of such notice.

        **a.** Should the violator fail to correct the violation within this 30 day period, the County Engineer may request that the sheriff of the County issue a summons and complaint to the violator, stating the nature of the violation with sufficient particularity to give notice of said charge to the violator.

        **b.** The summons and complaint shall require that the violator appear in County Court at a definite time and place stated therein to answer and defend the charge.

**4-408 Nonconforming Structures and Uses**

**A.** Existing Structures and Uses

    **1.** The use of any structure on land within the FO district that was lawful before the adoption or amendment of this Section, but that does not conform to the requirements of this Section may be continued subject to the following conditions:

        **a.** No such building structure or use may be expanded or enlarged unless the expansion or enlargement itself complies with the floodproofing provisions of Paragraph 4-405 of this Section.

            **(i)** When a building or other structure has been damaged so that the market value of such repair or replacement does not exceed 50 percent of the market value before the damage occurred, the structure may be restored to its size immediately before the damage occurred.

            **(ii)** Such reconstructed portion shall be constructed as required within Paragraph 4-405 of this Section, and shall not be deemed to be a substantial expansion or enlargement.

            **(iii)** Any restoration or replacement of a structure damaged to an extent exceeding 50 percent of its market value before the

damage occurred shall be deemed to be a substantial expansion or enlargement, and the entire structure shall be protected as required with Paragraph 4-405 of this Section.

2. A substantial improvement to any building or other structure or change in the use of a building or structure will require that the building or structure conform to the requirements of this article.

3. No person shall store or process materials that are buoyant, flammable, hazardous, toxic or explosive, or that in times of flooding could be harmful to human, animal, or plant life except at or above the flood protection elevation.

4. No person shall expand or enlarge an existing building or other structure or use unless it conforms to the requirements of this Article.

B. If a conflict arises between the requirements of this Section and the provisions of Section 4-1000, Nonconforming Structures and Uses, the requirements of this Section shall control.

**4-409 Appeals and Variances**

A. Appeals to the Board of Adjustment may be taken by any person aggrieved by his inability to obtain a floodplain development permit or by the decision of the County Engineer based upon or made in the course of the administration or enforcement of the provisions of this Section.

1. The Board of Adjustment shall hear and decide appeals and requests for variances from the requirements of this Section 4-400.

2. The Board of Adjustment shall hear and decide appeals when it is alleged there is an error in any requirement, decision, or determination made by the County Engineer in the enforcement or administration of this Section 4-400.

3. The procedures and requirements for the filing of appeals and variance requests are set forth in Section 2-800 ("Boulder County Board of Adjustment"), the pertinent provisions of Article 3 ("Processes"), and Section 4-1200 ("Board of Adjustment") of this Code, in addition to this Section 4-409.

4. In passing upon such applications, the Board of Adjustment shall consider all technical evaluations, all relevant factors and standards specified in other applicable sections of this Code, and:

a. the danger that materials may be swept onto other lands to the injury of others;

b. the danger to life and property due to flooding or erosion damage;

c. the susceptibility of the proposed facility and its contents to flood damage and the effect of such damage on the individual owners;

d. the importance of the services provided by the proposed facility to the community;

e. the necessity to the facility of a waterfront location, where applicable;

f. the availability of alternative locations for the proposed use which are not subject to flooding or erosion damage;

g. the compatibility of the proposed use with the existing and anticipated development;

h. the relationship of the proposed use to the Comprehensive Plan, any adopted intergovernmental agreement affecting land use, and any floodplain management program for the subject area;

i. the safety of access to the property in times of flood for ordinary and emergency vehicles;

**Boulder County Land Use Code**

- **j.** the expected heights, velocity, duration, rate of rise and sediment transport of the flood waters and the effects of wave action, if applicable, expected at the site; and,
- **k.** the costs of providing governmental services during and after flood conditions, including maintenance and repair of public utilities and facilities such as sewer, gas, electrical, and water systems, streets and bridges.

5. Upon consideration of the factors of Subsection 4-409(A)(4) and the purposes of this Section 4-400, the Board of Adjustment may attach such conditions to the granting of variances as it deems necessary to further the purposes of this Section 4-400.

6. The County Engineer shall maintain the records of all appeal actions, including technical information, and report any variances to the Federal Emergency Management Agency.

**B.** Conditions for Variances

1. Generally, variances may be issued for new construction and substantial improvements to be erected on a lot of one-half acre or less in size contiguous to and surrounded by lots with existing structures constructed below the base flood level, providing items (i-xi) in Paragraph 4-409(A)(4) have been fully considered. As the lot size increases beyond the one-half acre, the technical justifications required for issuing the variance increases.

2. Variances may be issued for the reconstruction, rehabilitation or restoration of structures listed on the National Register of Historic Places or the State Inventory of Historic Places without regard to the procedures set forth in the remainder of this section.

3. Variances shall not be issued within any designated floodway if any increase in flood levels during the base flood discharge would result.

4. Variances shall only be issued upon a determination that the variance is the minimum necessary, considering the flood hazard, to afford relief.

5. Variances shall only be issued upon:
   - **a.** a showing of good and sufficient cause;
   - **b.** a determination that failure to grant the variance would result in exceptional hardship to the applicant; and
   - **c.** a determination that the granting of a variance will not result in increased flood heights, additional threats to public safety, extraordinary public expenses, create nuisances, cause fraud on or victimization of the public as identified in Paragraph 4-409(A)(4) or conflict with existing local laws or ordinances.

6. Any applicant to whom a variance is granted shall be given written notice that the structure will be permitted to be built with a lowest floor below the base flood elevation and that the cost of flood insurance will be commensurate with the increased risk from the reduced lowest floor elevation.

a. Sales of non-plant and animal products may comprise no more than 10% of total sales.

b. One single family dwelling, occupied by the owner, operator, or manager of the farm, would be considered customary and incidental as a part of this use.

D. **Open Agricultural Uses**

1. Definition: Agricultural uses which do not have structures, other than accessory structures, associated with their operation, including but not limited to the grazing, keeping and use of livestock, the production of agricultural or horticultural products, and accessory storage.

2. Districts Permitted: By right in F, A, RR, ER, LI, GI, and MI

3. Parking Requirements: One space per 1,000 square feet of floor area.

4. Loading Requirements: One space per 10,000 square feet of floor area.

5. Additional Provisions:

a. This use is not required to be located on a building lot, or comply with the minimum lot size requirement for the district in which it is located unless it has an associated dwelling.

b. Sales of agricultural and horticultural products grown on parcels under the same ownership, lease or contract is permitted in F, A, LI, and GI.

c. One single family dwelling, occupied by the owner or manager of the farm, will be considered customary and incidental as a part of this use.

d. Boarding of horses is permitted. Improved riding facilities may be provided in connection with boarding and made available to fewer than 15 different individual people per month, in addition to the owner or manager of the property.

(i) Limited impact special review is required for any equestrian center with amplified sound and/or lighted outdoor riding, driving, or showing of horses. Special review is required for competitive events open to participants outside of those who board or train at the facility. *(8/13/98)*

e. Any accessory structures must be predominately accessory to the use of the property on which the structure is located except for storage of associated agricultural equipment and agricultural and horticultural products grown on parcels under the same ownership, lease, or contract.

## 4-503 Commercial/Business Service Uses

A. **Building Contracting Shop**

1. Definition: A facility providing for general building repair, service, and maintenance including installation of plumbing, roofing, signs, electrical, air conditioning, heating, and landscaping.

2. Districts Permitted: By right in C and GI

3. Parking Requirements: One space per 200 square feet of floor area

4. Loading Requirements: One loading space for 10,000 or more square feet of floor area

5. Additional Provisions: None

B. **Carpentry, Woodworking, or Furniture Making Facility**

1. Definition: A facility for the making, repairing, or refinishing of furniture or wood products for sale.

**Boulder County Land Use Code**

2.  Districts Permitted: By right in C and GI
3.  Parking Requirements: One Space per 500 square feet of floor area
4.  Loading Requirements: One loading space for 10,000 or more square feet of floor area
5.  Additional Provisions: None

**C.   Car Wash**

1.  Definition: An area of land and/or a structure with machine- or hand-operated facilities used principally for the cleaning, washing, polishing, or waxing of motor vehicles. A facility of this type may be able to accommodate more than one vehicle at the same time.
2.  Districts Permitted: By right in C and GI
3.  Parking Requirements:
    a.   One space per washing bay
    b.   Five stacking spaces per washing bay
4.  Loading Requirements: None
5.  Additional Provisions: None

**D.   Commercial Bakery**

1.  Definition: A commercial establishment for the production of baked goods, primarily for sale to other commercial establishments.
2.  Districts Permitted: By right in C, LI, NRCD, and GI
3.  Parking Requirements: One space per 5000 square feet of floor area
4.  Loading Requirements: One loading space for 10,000 or more square feet of floor area
5.  Additional Provisions: None

**E.   Commercial Laundry and Dry Cleaning**

1.  Definition: A facility for the cleaning or laundering of garments, fabrics, rugs, draperies, or other similar items on a commercial or bulk basis.
2.  Districts Permitted: By right in C and GI
3.  Parking Requirements: One space per 500 square feet of floor area
4.  Loading Requirements: One loading space for 10,000 or more square feet of floor area
5.  Additional Provisions: None

**F.   Kennel** *(10/12/2000)*

1.  Definition: Any place or premises, other than a pet shop or veterinary clinic, used in whole or part for the purpose of keeping eight or more dogs or cats in any combination whether the animals are boarded or household pets.
2.  Districts Permitted: By special review or limited impact special review in A; by special review in MI
3.  Parking Requirements: One space per 300 square feet of floor area, with a minimum of two spaces
4.  Loading Requirements: None
5.  Additional Provisions:
    a.   For kennels with eight to 12 dogs or cats:
        (i)   the animals shall be kept a minimum of 100 feet from any property line or other mitigating circumstance exists or may be created which has the same or better mitigating effect; and

      **(ii)**     kennels of this size require limited impact special review

  **b.**    For kennels with more than 12 dogs or cats:

      **(i)**     the animals shall be kept a minimum of 300 feet from any property line or other mitigating circumstance exists or may be created which has the same or better mitigating effect.

      **(ii)**     kennels of this size require special review.

  **c.**    If a single family dwelling is used as the holding facility for boarded animals, the use shall be limited to no more than 12 boarded animals but in no case shall there be more than 15 dogs including household pets or no more than 15 total cats including household pets, and the requirements of 5 (a) above shall apply.

  **d.**    One single family dwelling, occupied by the owner, operator, or manager of the business will be considered customary and incidental as a part of this use.

  **e.**    Kennels which legally existed on April 1, 2000 will be considered conforming at their present levels of use provided a site plan and description of the operation is submitted to the Land Use Department by December 31, 2000.

**G.**    **Machine Shop**

  **1.**    Definition: A facility where material is processed or treated by machining, cutting, grinding, welding, or similar processes.

  **2.**    Districts Permitted: By right in C and GI

  **3.**    Parking Requirements: One space per 500 square feet of floor area

  **4.**    Loading Requirements: One loading space for 10,000 or more square feet of floor area

  **5.**    Additional Provisions: None

**H.**    **Printing and/or Publishing Establishment**

  **1.**    Definition: A facility for the reproduction, cutting, printing, or binding of materials on a bulk basis using lithography, offset printing, blueprinting, silk screening, or similar methods.

  **2.**    Districts Permitted: By right in B, C, and GI

  **3.**    Parking Requirements: One space per 500 square feet

  **4.**    Loading Requirements: One loading space for 10,000 or more square feet of floor area

  **5.**    Additional Provisions: None

**I.**    **Vehicle Sales/Rental Lot** *(9/5/96)*

  **1.**    Definition: A parcel designated for the sale or rent of three or more motor vehicles per year. Vehicles include but are not limited to cars, trucks, boats, recreation vehicles, and trailers.

  **2.**    Districts permitted: By right in GI; by special review in B and C for operations entirely contained inside a structure.

  **3.**    Parking Requirements: one space for every 500 square feet of floor area and 1000 square feet of outside display area.

  **4.**    Loading Requirements: One loading space for 10,000 or more square feet of floor area.

  **5.**    Additional Provisions:

    **a.**    A vehicle service center to maintain vehicles displayed on the premises shall be considered customary and incidental to this use.

## 4-600 Uses Permitted by Special Review and Limited Impact Special Review *(9/5/96)*

A.  A use permitted by special review may be established in a zoning district only upon approval of the Board, after review by the Planning Commission, and subject to the conditions set forth in an approval of the use by the Board.

B.  A use permitted through limited impact special review may be established in a zoning district only upon approval of the Board, and subject to the conditions set forth in an approval of the use by the Board

## 4-601 Standards and Conditions

A.  A use will be permitted by special review only if the Board finds that the proposed use meets the following standards and conditions:

1.  except as otherwise noted, the use will comply with the minimum zoning requirements of the zoning district in which the use is to be established, and will also comply with all other applicable requirements;

2.  will be in harmony with the character of the neighborhood and compatible with the surrounding area;

3.  will be in accordance with the Comprehensive Plan;

4.  will not result in an over-intensive use of land or excessive depletion of natural resources;

5.  will not have a material adverse effect on community capital improvement programs;

6.  will not require a level of community facilities and services greater than that which is available;

7.  will not result in undue traffic congestion or traffic hazards;

8.  will not cause significant air, odor, water, or noise pollution;

9.  will not require amendment to the Regional Clean Water Plan;

10. will be adequately landscaped, buffered, and screened; and

11. will not otherwise be detrimental to the health, safety, or welfare of the present or future inhabitants of Boulder County.

B.  If the proposed use is approved or conditionally approved, the Board may impose such conditions and safeguards to insure compliance with the requirements, standards, and conditions of this Section 4-600. The violation of any condition, safeguard, or commitment of record shall be sufficient grounds for revocation of the special review approval by the Board, after a public hearing held in accordance with provisions of Paragraph 3-205(C).

C.  A development agreement must be submitted and approved by the Board.

D.  Where appropriate, in order to enable the proposed use to meet the standards set forth in (A) above, the Board may require the dedication of a perpetual conservation easement upon so much of the site as may be determined necessary to mitigate impacts of special uses.

## 4-602 Special Provisions

A.  Special Review Approval for Mining

1.  In addition to the standards of approval set forth in Paragraph 4-601(A), an applicant for open mining, subsurface mining, or limited impact mining must also meet the following:

a.  compliance with a plan of reclamation;

b.  compliance with use, location, and setback regulations established by the Board for the proposed operation; and

November 1, 2005

**Boulder County Land Use Code**

       c.     compliance with bulk regulations established by the Board for areas reclaimed in accordance with the plan of reclamation.

    2.    If the proposed mining use is approved, the Board shall impose such conditions and safeguards as are necessary to insure continued compliance with the requirements set forth in this Paragraph.

**B.**    Special Review for Development in the ED District

    **1.**    In addition to the standards of approval set forth in Paragraph 4-601(A), approval for a planned development in the ED district must also meet the following:

        **a.**    Employment projections and projected space requirements demonstrate a need for such a development.

        **b.**    The applicant is the intended user of the site and has demonstrated legal interest in the property.

        **c.**    Direct and indirect local employment opportunities for the community, that would result if the application were to be approved, are consistent with the rate of growth of population as projected within the Comprehensive Plan.

        **d.**    The public benefits are substantial and there will be no significant negative impacts on the quality of life of those residents in the surrounding area, and no major negative fiscal, service, environmental, or related land use impacts upon the County, or other communities in the County.

        **e.**    Uses Permitted: Uses shall have no harmful or unpleasant effects which would be more objectionable than the normal environmental features of surrounding areas. Uses within the ED district shall be compatible with surrounding areas of noise, odors, fumes, glare, vibration, smoke, vapors and gases, electrical emissions, and industrial wastes.

        **f.**    Traffic: Traffic going to and from the ED district shall be permitted on nonresidential streets only. Within the ED district, access and service roads from existing through streets may be required. Traffic routes within the ED district shall ordinarily be at least 100 feet from outer boundaries of the Economic Development District.

        **g.**    Truck Loading Facilities: Adequate provision shall be made for off-street truck loading facilities. These areas shall not be in a front yard and shall not be within 100 feet of a residential zoning district.

        **h.**    Landscaping: The front yard of each principal use within an ED district shall be planned (and subsequently maintained) in a dust-free condition by suitable landscaping with trees, shrubs, or other planted or natural ground cover. Other yards within an ED district shall be similarly landscaped or paved with asphaltic, concrete, rock, oil surfacing or other resilient materials.

        **i.**    Storage: All materials and equipment used in connection with an economic development project shall be enclosed within a building or enclosed within a solid wall or fence at least six feet in height. Ordinarily such storage areas shall be at least 100 feet from any property line or street line.

        **j.**    Lot Coverage: Developed areas may constitute no more than 40% of the entire site, unless it is determined that it is in the best interest of the

community to allow a larger area to be developed in which case developed areas may constitute as much as 50% of the site. The purpose of this requirement is to assure that the development will be compatible with the surrounding area.

k.  Construction Plans: Preliminary construction plans for the proposed buildings and preliminary engineering plans for installation of necessary utilities shall be presented prior to approval of a site plan.

l.  Number of Employees or Residents: An estimate of the maximum number of employees or residents contemplated for the proposed development shall be presented.

m.  Site Plan: The site plan and accompanying documents as approved by the Board shall be filed with the Director. Location and size of the undeveloped area and siting and phasing of the developed area must be approved as part of the application. The effects of phasing on population increases that may result from an expansion of the employment base shall be considered, along with all other relevant impacts.

n.  Certificate of Occupancy: Prior to the use or change in use of a structure approved through this process, a certificate of occupancy shall have been issued by the Building Official. Such certificate shall show that such building or premises and the proposed use are in conformity with the provisions of this Code and with all requirements set forth by official action of the Board in their approval of the site plan.

2.  A special review approval for a use within the ED district shall expire three years after the date upon which it was issued, if not more than one-half the floor area of all buildings and improvements shown on the approved site plan has been constructed within that period of time.

C.  Special Review for Uses which Exceed Additional Requirements of Zoning Districts

1.  In addition to the standards of approval set forth in Paragraph 4-601(A), a use which exceeds these additional requirements must also meet the following:

a.  Employment projections and projected space requirements must demonstrate a need for such a development.

b.  The applicant shall be the intended user of the site and shall have a demonstrated legal interest in the property.

c.  It shall be demonstrated that direct and indirect local employment opportunities for the community that would result, if the application were to be approved, are consistent with the rate of growth of population as projected within the Comprehensive Plan.

d.  The development may be approved only if the public benefits are substantial and there will be no significant negative impacts on the quality of life in the surrounding area, and no major negative fiscal, service, environmental, or related land use impacts.

e.  Construction Plans: Preliminary construction plans for the proposed buildings and preliminary engineering plans for installation of necessary utilities shall be presented prior to approval of a site plan.

f.  Number of Employees or Residents: An estimate of the maximum number of employees or residents contemplated for the proposed development shall be presented.

**Boulder County Land Use Code**

4-600 Uses Permitted by Special Review and Limited Impact Special Review (9/5/96)

g.  Site Plan: The site plan and accompanying documents as approved by the Board shall be filed with the Director. Location and size of the undeveloped area and siting and phasing of the developed area must be approved as part of the application. The effects of phasing on population increases that may result from an expansion of the employment base shall be considered, along with all other relevant impacts which are likely to result from such siting and phasing.

h.  Certificate of Occupancy: Prior to the use or change in use of a structure approved through this process a certificate of occupancy shall have been issued by the Building Official. Such certificate shall show that such building or premises and the proposed use are in conformity with the provisions of this Code and with all requirements set forth by official action of the Board in their approval of the site plan.

i.  A special review approval for a nonurban development shall expire one year after the date upon which it was issued if a site plan for the proposed development is not approved by the Board within that year, or three years after the date upon which it was issued if not more than one-half the floor area of all buildings and improvements shown on the approved site plan has been constructed.

D.  Special Review for a Telecommunication Facility

1.  In addition to the listing of adjacent owners required as part of the title report submitted with the special review application, the Land Use Staff may prepare a similar listing of all owners and their addresses of real property within one-half mile of the location of the proposed facility. This listing may be used in addition to the adjacent owner list for all referral and notice requirements of Article 3.

2.  In addition to compliance with those conditions required within or imposed by the Board of County Commissioners pursuant to Paragraph 4-601(A), an applicant seeking special review approval for a telecommunication facility shall comply with the following conditions and requirements:

a.  Alternative site and/or design studies provided by the applicant shall show that reasonable consideration has been given to such alternative sites and/or designs and the proposal is the most acceptable alternative to Boulder County.

b.  The alternative of consolidation of multiple telecommunication facilities onto a single tower, either by use of an existing tower or moving existing facilities to the proposed tower, shall be studied by the applicant and, when feasible and not otherwise detrimental, shall be considered the preferred alternative. Colocation may not be required when, in the opinion of the Director or the Board of County Commissioners, as appropriate, the consolidation of facilities will create an over-intensive use of the existing site, or will create a significant negative visual impact on surrounding private or public lands. *(8/12/99)*

c.  When feasible, telecommunication facilities shall be located adjacent to, on, or incorporated into existing or proposed buildings or other structures.

d.  Where a telecommunication system uses a network of facilities, the applicant shall demonstrate that a comprehensive approach for

evaluating potential sites in Boulder County with a view to minimizing the number of sites required and any adverse impact has been taken.

    e.    Proposed landscaping and/or screening shall be in harmony with the character of the neighborhood and compatible with the surrounding area.

**E.**    Special Review for a Use of Community Significance

    **1.**    A use of community significance is a use which the Board determines to be a use having significant historic, cultural, economic, social, or environmental value to Boulder County, which does not conform to the regulations of the district in which the use is located as a result of either the adoption or amendment of this Code, and which can not be made conforming through any other county discretionary review process.

    **2.**    A use of community significance may be approved through special review even though it is not in conformance with the Comprehensive Plan, and does not meet the bulk or minimum lot size requirements of the zoning district in which it is located.

    **3.**    In addition to the standards of approval set forth in Paragraph 4-601(A), a use of community significance must also meet the following:

        **a.**    The use does not impair the Goals and Policies of the Comprehensive Plan, considering the nature and history of the use.

        **b.**    The use has a significant historic, cultural, economic, social, or environmental value to the inhabitants of Boulder County as a whole, or to a recognized community of interest within the County.

        **c.**    The significant community interest served by the use can not be served by the relocation of the use to the nearest zoning district in which it could be permitted by right or by special review, or by the existence or location of similar uses elsewhere in the County.

        **d.**    The applicant has obtained, or commits to obtain as a condition of the special review approval, all applicable federal, state, and local licenses or permits, and is in compliance with all applicable federal, state, and local regulations.

## 4-603 Modification of a Special Review Approval

**A.**    No substantial modification of the provisions of a special review approval shall be permitted by the Board of County Commissioners, except upon a finding following review and public hearings held in accordance with the provisions of Article 3 of this Code, that the modification is consistent with the standards set forth in this Section 4-600.

**B.**    No activity or use authorized pursuant to an approval granted subject to the provisions of this article shall be permitted or allowed to commence unless a site specific development agreement has been approved pursuant to the requirements of this Code.

## 4-604 Limitation of Uses by Special Review

**A.**    Subject to vested rights, no use by special review shall commence operation or construction later than five years from the date of the Board approval or conditional approval.

**B.**    Any approved use by special review which does not significantly commence operation or construction on any portion of the special use permit within five calendar years after the use has received Board approval, shall lapse, and shall be of no further force and effect unless a new discretionary approval is granted under this Code. If a vesting

**Boulder County Land Use Code**

period of longer than five years is expressly approved as part of the special use permit, the approval shall lapse if operation or construction is not commenced within the vesting period.

    C.    Any approved use by special review which commences operation or construction as required under Subsection (B), immediately above, shall lapse, and shall be of no further force and effect, if the use is inactive for any continuous five-year period. If this period of inactivity occurs, the use may not be recommenced without a new discretionary approval granted under this Code. An approved special use shall be deemed inactive under this Subsection (c) if there has been no activity under any portion of the special use permit for a continuous period of five years or more as a result of causes within the control of the special use permittee or agent.

Boulder County Land Use Code

## 18-158 FLOODPLAIN DEVELOPMENT

Under floodplain regulations, any public or private construction or activity that changes the basic character or the topography of the land on which the construction or activity occurs, including but not limited to any manmade change to improved or unimproved real estate, construction or substantial improvement of buildings or other structures. Development includes mining, dredging, filling, grading, paving, excavation, or drilling operations; and all dams, reservoirs, walls, embankments, berms, levees, dikes, piles, abutments, projections, channel rectification, roads, bridges, culverts, excavations, and fills.

## 18-159 FLOODPLAIN ENCROACHMENT

Any development, stockpile, refuse, or matter in, along, across, or projecting into any floodplain which might impede, retard, or change the direction of a flow of water, either by itself or by catching or collecting debris carried by such water. The term floodplain encroachment shall not include any device or structure reasonably necessary for flood control or prevention.

## 18-160 FLOODPROOFING

A combination of provisions, changes, or adjustments to structures, moveable objects, or properties for the purpose of the reduction or elimination of the potential for flood damage from the base flood.

## 18-161 FLOODWAY

A.  Those portions of the Floodplain Overlay District required for the passage or conveyance of the base flood in which waters will flow at significant depths or with significant velocities. It includes the channel of a river or creek and any adjacent floodplain areas that must be kept free of development and other encroachments so the base flood can be conveyed without substantial increase in flood height.

B.  Specifically, the floodway is defined according to the following criteria:

1.  Those areas defined by the effective Flood Insurance Rate Map with cross-hatching overlay of areas in Zone AE; *(10/29/02)*

2.  Those portions of the Floodplain Overlay District that must be kept free of development and other encroachments so the base flood is conveyed with no more than a one foot increase in the water surface elevations, and which areas have been identified as floodway by the Colorado Water Conservation Board within those reports (including technical addendum thereto) listed in Section 4-402 of this Code;

3.  Where the floodway has not been so identified, it is those portions of the Floodplain Overlay District determined to be in the floodway by a detailed hydraulic analysis approved by the County Engineer as set forth in Section 4-407(B)(7) of this Code;

4.  Where the floodway has not been so identified or determined, it is those portions of the Floodplain Overlay District where floodwater from the base flood is 18 inches or greater in depth.

C.  However, in no instance shall the floodway extend less than 25 feet from the banks of the river or creek, unless such bank consists of an impervious natural rock wall or cliff which is higher than the flood elevation.

## 18-162 FLOOR AREA

The sum of the areas of the floors in a building measured to the inside faces of exterior walls or to the omitted wall lines, including covered porches, whichever produces the larger area. Any unfinished space with a ceiling height of less than seven feet measured to the lowest