

## Drexel, Barrell & Co.

January 20, 2006                                                     *E5684*

**Boulder County**
**Office of the County Attorney**
1325 Pearl Street, 5th Floor
Boulder, Colorado 80302

**Engineers/Surveyors**

Boulder
Greeley
Colorado Springs
Steamboat Springs

1800 38th Street
Boulder, Colorado
80301

303.442.4338
303.442.4373 Fax

**Attn: David Hughes**

**Re:   Johnson vs. Boulder County**

Mr. Hughes,

The purpose of this letter is to serve as a rebuttal to the Land Survey Report provided by Tom Cave, PLS of Accurate EngiSurv LLC, dated December 23, 2005. The report was submitted in support of the case of Johnson vs. Boulder County.

Mr. Cave was retained by Ms. Tynia Johnson as an expert witness on her behalf. According to Mr. Cave's resume provided by the Boulder County Attorney's office, Mr. Cave appears to have extensive experience as a Professional Licensed Surveyor but no experience as a Registered Professional Engineer.

The Scope of Mr. Cave's Land Survey Report states that he was retained by Ms. Johnson to provide a *"professional opinion of the location of the Floodplain on the subject property and the decision of the conditional approval by the Boulder County Commissioners."* It is the opinion of Drexel, Barrell & Co. that, while a Professional Licensed Surveyor may be qualified to interpret floodplain elevations as they relate to existing grades and structures, only a Professional Engineer is qualified to give a professional opinion in regards to the hydraulic and hydrologic processes that are used to define floodplains and floodways.

The following are responses to conclusions that Mr. Cave makes in his report. They are numbered to correlate to his report:

**6.1**   It is unclear what property Mr. Cave is referring to. We could find no evidence that development was allowed to occur within the floodplain that was not consistent with the County's floodplain criteria. If building permits were issued for development within the floodplain without a floodplain development permit, they were issued in error by the County. This should not have any impact on Ms. Johnson's case since it is known that the project is located within the 100-year floodplain. If the county were to issue a building permit in this case without a floodplain development permit, the County would be in violation of their floodplain standards.

Mr. Case also refers to the floodway designation as "unofficial". This reference is incorrect since the floodway encroachments were modeled in the originally adopted floodplain study.

6.2   As noted above, floodway encroachments were included in the original floodplain study for Coal Creek and Rock Creek. This information was subsequently adopted by Boulder County in the County's Land Use Code. In effect Boulder County had given public notice simply by adopting the Land Use Code, which is typically a very public process. The following are excerpts from Section 4-402 citing the report that defines the Floodplain Overlay District for Coal Creek:

> *"The following reports designate the location and boundaries of the [Floodplain Overlay] district...*
>
> *8. 'Flood Hazard Analysis/Coal Creek and Rock Creek, Boulder and Weld Counties, Colorado,' October 1976 prepared by the U.S. Department of Agriculture, Soil Conservation Service in cooperation with the Colorado Water Conservation Board, Urban Drainage and Flood Control District, Coal Creek Water Users Association, Boulder County and Weld County.*
>
> *B. The maps in these reports depicting the floodplain for the base flood shall be considered the official maps for the purpose of locating the [Floodplain Overlay] district and establishing those areas affected by the provisions and regulations of this Section. "*

6.3   Mr. Cave's statement that "the applicant requested no zone change thereby negating the need for the LOMR" is simply incorrect. A request for a change in zoning has no bearing on the LOMR requirement, which is based solely on floodplain criteria. A LOMR would be required regardless of the zoning designation under County regulations and is a separate and distinct process. Under FEMA and County regulations, a LOMR or LOMA is needed anytime a party wishes to change the mapped boundary limits of a floodplain or floodway. The fact that a Special Use Permit was invoked due to the noise abatement requirement has no bearing on the separate requirements for a LOMR.

6.4   The applicant was advised to apply for a floodplain development permit or a LOMR/LOMA. The Boulder County Land Use Code states in Section 4-403.C:

> *"Any development in the floodway shall be permitted only upon application to the County Engineer and the issuance of a floodplain development permit. "*

The Land Use Code states in Section 4-402.E.1.b:

> *"Should the Planning Commission or any person or persons, as a result of such a study or for other reasons, desire to change the boundaries of any FO district, the procedure for rezoning set forth in Section 4-1100 shall be followed. "*

Under County floodplain regulations, Ms. Johnson had two options:

1. Apply for a floodplain development permit as outlined in The Boulder County Land Use Code section 4-407, which includes among other requirements:
   "*A floodway analysis by a Colorado Registered Professional Engineer using methodology acceptable to the Federal Emergency Management Agency.*"

2. Obtain a LOMR/LOMA through the process outlined in section 4-1100 for rezoning.

Ms. Johnson did submit a LOMA application to FEMA for review and approval, however, this application was later dropped by FEMA when Ms. Johnson failed to respond to comments.

Whether or not either of these solutions is *"totally unnecessary for improvements of this magnitude"* is not a determination that Mr. Cave is qualified to make since Boulder County code clearly states that any development within the floodplain is subject to the County's floodplain regulation. Citing Boulder County Land Use Code Section 4-403.A:

> "*No Development, encroachment, use, or alteration in, on or over any part of the floodway shall be permitted which alone or cumulatively with other such uses would cause or result in:*
> 1. *the occupation of permanent or temporary structures;*
> 5. *the potential of solid debris (including, but not limited to garages, storage sheds, decks, fences, etc) or waste (including but not limited to septic systems) being carried downstream;*
> 6. *an encroachment that would adversely effect the efficiency of the floodway or change the direction of flow or cause any increase in the base flood elevation.*"

It is up to Ms. Johnson and any professional experts that she retains to demonstrate through accepted engineering methods that the proposed development would produce no adverse effect on the base flood elevation or floodway. This burden of proof always falls on the applicant since development within the floodplain could potentially impact other adjacent property owners.

6.5 It is unclear what Mr. Cave is trying to convey in the first two sentences of conclusion 6.5. 44 CFR provides the minimum criteria that must be included in communities' floodplain management regulations but FEMA delegates the responsibility of administration of the program to the individual communities. §60.1 paragraph (d) of 44 CFR also gives the communities leeway to impose stricter regulations than those in the base criteria:

> "*The criteria set forth in this subpart are minimum standards for the adoption of floodplain management regulations by flood-prone, mudslide, (i.e. mudflow)-prone and flood-related erosion–prone communities. Any community may exceed the minimum criteria under this part by adopting more comprehensive floodplain management regulations utilizing the standards such as contained in subpart C or this part. In some instances, community officials may have access to information or knowledge of conditions that require, particularly for human safety, higher standards than the minimum*

*criteria set forth in subpart A of this part. Therefore, <u>any floodplain management regulations adopted by a State or community which are more restrictive than the criteria set forth in this part are encouraged and shall take precedence</u>."*

The Boulder County Land Use Code takes precedence over 44 CFR and should be the first point of reference when determining what rules apply in the situation of floodplain management.

It is unclear who Mr. Cave is referring to as *"the applicant's engineer"*. In February 2002 Ms. Johnson's <u>attorney</u> submitted a letter to the Boulder County Department of Transportation regarding the fence issue relative to floodplain regulations. Also submitted were hydraulic calculations performed by Ms. Johnson's representative, a <u>Professional Licensed Surveyor</u>. We have not received any information that indicates that Boulder County has been contacted by or received work performed by a Registered Professional Engineer hired by Ms. Johnson.

The applicant's *"effort to comply with requirements"* fell short of actually complying. Ms. Johnson was informed that in order to obtain a floodway development permit she would need to hire a Registered Professional Engineer licensed in the State of Colorado to provide a floodway analysis of the proposed improvements. This request is typical for development within the floodway. According to our information, this was not done. It should also be noted that Ms. Johnson could have bypassed this requirement if she were to demonstrate to the County that the floodplain was incorrectly mapped through FEMA's LOMA process. While Ms. Johnson did file a LOMA application with FEMA, she did not address FEMA's comments and the application was dropped.

6.6    Once again, The Boulder County Land Use Code Section 4-403.C states:

> *"**Any development in the floodway shall be permitted only upon application to the County Engineer and <u>the issuance of a floodplain development permit</u>."*

Section 4-407 goes on to outline the required information to be included in the floodplain development permit including:

> *"...a floodway analysis by a Colorado Registered Professional Engineer using methodology acceptable to the Federal Emergency Management Agency."*

This requirement is typical for any community participating in the National Flood Insurance Program (NFIP) and is not a specific requirement only of Boulder County.

6.7    Boulder County staff relied on the published FIRM map <u>as well as</u> the report mentioned above in Land Use Code Section 4-402.A.8 that contains the calculations defining the floodway of Coal Creek. Section 4-402.D.1 of the Boulder County Land Use Code states:

> *"Where interpretation is needed as to the exact location of the boundaries of the FO district, <u>the County Engineer</u> shall make the necessary interpretation by referring, as necessary, to the engineering study upon which the maps and elevations are based, to*

*the professional engineers who prepare the study, to the Colorado Water Conservation Board, and /or the Federal Emergency Management Agency."*

A field survey is not a requirement in the review process of the floodplain development permit, nor is a field survey alone adequate information to determine the limits of the floodway. Correctly determining the floodway requires detailed hydraulic analysis of the waterway in question (which incorporates field survey data) using an accepted method of hydraulic modeling such as HEC-2, HEC-RAS or HUD-15.

In our opinion, County Engineer Dave Webster used sound engineering judgment in his interpretation of the floodway based on the original floodplain study. The methodology he used was the standard of care for the profession. If the applicant believes that the area in question is not within the floodway or that it was incorrectly mapped, it is up to the applicant to demonstrate to the County why the floodway determination is incorrect. In our opinion Mr. Cave has not adequately demonstrated this in his report.

**6.8** The Boulder County Land Use Code defines "Floodway" as follows:

- *"Those portions of the Floodplain Overlay District required for the passage or conveyance of the base flood in which waters will flow at significant depths or with significant velocities. It includes the channel of a river or creek and any adjacent floodplain areas that must be kept free of development and other encroachments so the base flood can be conveyed without substantial increase in flood height.*
- *Specifically, the floodway is defined according to the following criteria:*

1. *Those areas defined by the effective Flood Insurance Rate Map with cross-hatching overlay areas in Zone AE; (10/29/02)*
2. *Those portions of the Floodplain Overlay District that must be kept free of development and other encroachments so the base flood is conveyed with no more than a one foot increase in the water surface elevations, and which areas have been identified as floodway by the Colorado Water Conservation Board within those reports (including technical addendum thereto) listed in Section 4-402 of this Code;*
3. *Where the floodway has not been so identified, it is those portions of the Floodplain Overlay District determined to be in the floodway by a detailed hydraulic analysis approved by the County Engineer as set forth in Section 4-407(B)(7) of this Code;*
4. *Where the floodway has not been so identified or determined, it is those portions of the Floodplain Overlay District where floodwater from the base flood is 18 inches or greater in depth.*
5. *However, in no instance shall the floodway extend less than 25 feet from the banks of the river or creek, unless such bank consists of an impervious natural rock wall or cliff which is higher than the flood elevation."*

This definition expounds upon the 44CFR definition of regulatory flood way:

*"Regulatory floodway means the channel of a river or other watercourse and the adjacent land areas that must be reserved in order to discharge the base flood without cumulatively increasing the water surface elevation more than a designated height"*

The Land Use Code definition is a more detailed explanation giving more guidelines for determining the floodway and leaving less room for interpretation. A professional with the appropriate credentials and experience would not find the definition confusing.

In order to participate in the National Flood Insurance Program Boulder County must abide by the rules outlined in 44 CFR §59.2 (b)

*"To qualify for the Program community's must adopt and submit to the [Federal Insurance] Administrator floodplain management regulations designed to reduce or avoid future flood, mudslide or flood related damage. These regulations must include effective enforcement provisions"*

Failure to comply with at least the minimum requirements set forth by FEMA would jeopardize Boulder County's eligibility for flood insurance and federal assistance in the case of an emergency. To give special treatment to Ms. Johnson by issuing a floodplain development permit without the required evidence of no impact to the base flood or by waiving the requirement for a floodplain development permit would constitute a failure to comply with 44 CFR §59.2(b).

Ms. Johnson has proposed to construct a 6-foot high solid wood fence within the floodway. A structure such as this would have a significant and profound impact to the floodplain hydraulics and could cause adverse impacts to adjacent property owners. Impacts could include diversion of floodwaters by blocking the flow path, an increase in water surface elevations due to damming or accumulation of debris, or an increase in channel erosion due to increased velocities and concentrating flow paths.

Mr. Webster's recommendation to deny the Special Use Permit application was based on sound engineering judgment and made with the same consideration that would be given to any other application that involved a floodplain or floodway encroachment. As with any application of this nature the burden of proof falls on the applicant to demonstrate, using sound engineering practices, that the proposed development would bear no adverse impact on the floodplain and floodway. Based on our review of the information provided by Ms. Johnson and her consultant, this burden of proof has yet to be made.

Sincerely,
*Drexel, Barrell & Co.*

John Ewy, PE, CFM
Department Manager - Water Resources

*[Colorado Registered Professional Engineer seal — JOHN ARTHUR EWY — 31659]*