

Post Office Box 471 • Boulder, Colorado 80306

# Land Use Department

Courthouse Annex
2045 13th Street • 13th & Spruce Streets • Boulder, Colorado 80302 • (303) 441-3930

---

### BOARD OF COUNTY COMMISSIONERS

#### AGENDA ITEM
TUESDAY, MAY 14, 2002 – 10:00 AM

Hearing Room, Third Floor, Boulder County Courthouse

---

**PUBLIC HEARING – TABLED MAY 7, 2002**

**STAFF PLANNER:**    Greg Oxenfeld

**STAFF RECOMMENDATION**

**Docket SU-01-12: HALLMAN HOUSE KENNEL  SU / SSDP**

| | |
|---|---|
| Request: | Special Use Review / Site Specific Development Plan for a kennel with more than 12 dogs or cats. |
| Location: | At 12416 Flagg Drive, east of Lafayette and south of Baseline Road in Section 1, T1S, R69W |
| Zoning: | Agricultural (A) Floodplain Overlay (FO) |
| Applicants: | Tynia Johnson Patricia St. Cyr |
| Agent: | Ed Byrne, Attorney |

**DISCUSSION**

The Board of County Commissioners tabled this docket on May 7, 2002 to allow the applicants and the County Water Resource Engineer to re-review the floodway boundaries along the reach of Coal Creek on Flagg Drive. Based on the re-review, the County can consider areas where new fencing could be proposed. Additionally, the Board directed staff to prepare a list of conditions should the Board be inclined to approve the Special Use.

The applicants were originally requesting a kennel for up to 100 animals (60 dogs, 20 cats and 20 exotics), but have revised the application for a kennel with a maximum of 60 animals. The applicants are proposing six-foot cedar fences for a sound buffer to meet the requirement for a kennel with outdoor holding facilities requiring either a minimum of 300 feet from any property line or other mitigating circumstance exists or may be created which has the same or better mitigating effect.

---

| Jana L. Mendez | Ronald K. Stewart | Paul Danish |
|---|---|---|
| County Commissioner | County Commissioner | County Commissioner |

**BCLU 1065**
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12: Staff Recommendation
BOCC – May 14, 2002
Page 2 of 4

A Trip Generation Analysis prepared by Fox Higgins Transportation Group, dated February 6, 2002, notes that the site typically generates 10 trips per day on average, with up to 60 trips per day at peak operations occurring over a 1-2 day period in December. The Analysis notes peak occupancy of the kennel is 55 to 60 dogs, semi-peak times at the kennel occur during three-day weekend type holidays where the number of dogs on site ranges from 30 to 45 dogs. The Analysis also notes that on average, there would be zero to 10 dogs on the site at any one time.

The County Water Resource Engineer has reconsidered the floodplain issue and finds that the applicant essentially has three options, as follows:

1.   Construct the fence in areas outside the floodway as discussed at the close of the last hearing;

2.   Hire an engineer to have a floodway re-analysis prepared that meets all of the requirements of Article 4-407(B)(7);

3.   Submit a site survey and any other necessary information to FEMA as part of a Letter of Map Amendment (LOMA). A LOMA may be requested by property owners who have good reason to suggest that floodplain mapping on their property is not accurate. In this case, I have reviewed a site survey prepared by a licensed surveyor (for the applicant) that indicates her land may be above the 100-year water surface elevation. If this were the case, and the applicant received a LOMA from FEMA indicating her property was outside of a special flood hazard area (SFHA), it would allow building a new fence and a floodplain development permit would not be necessary.

## RECOMMENDATION

Based on the applicant's revised application (maximum of 60 animals), the numbers of dogs represented in the Trip Generation Analysis, and the Board's suggestion to reduce the number of animals for a balance between the kennel and rural character of the area, staff can recommend specific numbers of animals allowed on site. Staff has attached a copy of the most recent floodway/floodplain map that was presented at the last hearing, with the approximate boundary of the subject parcel. Should the Board be inclined to approve Docket SU-01-12: Hallman House Kennel Special Use and Site Specific Development Plan, staff recommends that the docket be subject to the following conditions:

1)   The kennel shall be limited to a maximum number of animals on site (including the applicants/owners own animals), as follows:

Holiday weekends (including Friday, Saturday, Sunday, and Monday) for Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, and Labor Day; and,
for a one-week period for the other major Holidays that include Thanksgiving, Christmas and New Years (effectively two weeks), Independence Day, and School District Spring Break (last two weeks in March) – 35 dogs, 15 cats, and 10 exotics (60 animals).

All other weekends (Friday-Sunday) – 15 dogs, 10 cats, 5 exotics (30 animals).
All other days – 10 dogs, 5 cats, and 5 exotics (20 animals).

**BCLU 1066**
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12: Staff Recommendation
BOCC – May 14, 2002
Page 3 of 4

2) The kennel shall be limited to the grooming of only the animals that are boarded on site in accordance with the maximum number of animals allowed on site.

3) The applicants shall install the proposed fencing, which must be approved by County staff, prior to commencing the approved kennel operation. The applicant shall submit a final fencing plan, which must be reviewed and approved by County staff, prior to recording the Development Agreement. The fencing shall not be placed in the floodway, and shall be subject to all applicable floodplain regulations of the Boulder County Land Use Code. If the revised fencing plan does not meet the same noise mitigation effect of a 300-foot buffer, the approval of this Special Use is automatically rescinded. The fencing shall consist of materials that are uniform (i.e., all cedar of similar color), and shall be installed to a standard that will withstand usual weather conditions in the area and contain the dogs.

4) The applicants shall apply for and complete the process for all required building permit(s) from Boulder County prior to commencing the approved kennel use. The applicants shall be subject to all requirements of the Uniform Building Code, as adopted by Boulder County. The two existing mobile homes shall also meet all required setbacks of the Agricultural Zoning District. No new buildings or structures (other than the approved fencing) are approved as part of this Special Use.

5) The applicants shall submit a landscape plan that includes some trees and shrubs to improve the appearance of the fencing, to be reviewed and approved by County staff prior to recording the Development Agreement. The applicant shall complete installation of all proposed new trees and landscaping prior to commencing the approved kennel use; or the applicants shall provide an acceptable form of guarantee for the required landscaping if weather is not conducive for installation within twelve months.

6) Prior to recording the Development Agreement, one copy of the proposed lighting plan with details for all exterior lighting must be submitted to and approved by the Land Use Department. Exterior lighting must be down lighting to minimize glare as much as possible. Details submitted must indicate location of all exterior fixtures on site and on structures, and must include cut sheets (manufacturer's specifications with picture or diagram) of all fixtures. Prior to the commencement of any kennel operation, the full installation of the approved lighting plan must be inspected and approved by the Land Use Department.

7) The applicants shall provide a letter from the U.S. Fish & Wildlife Service (Ecological Services, Colorado Field Office) regulating Preble's Meadow Jumping Mice regarding the proposed kennel use on the subject property, prior to recording the Development Agreement, and the applicants shall be subject to the recommendations of the U.S. Fish & Wildlife Service.

8) The subject property shall be limited to one single-family dwelling as an accessory use to the approved kennel, to be occupied by the owner, operator, or manager of the kennel.

BCLU 1067
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)

SU-01-12: Staff Recommendation
BOCC – May 14, 2002
Page 4 of 4

9)    The applicant is subject to all applicable Boulder County Health Department rules and regulations, including but not limited to the commitment to use paper feeding bowls and disposable bedding, and that no public or employee access is allowed to any structure on the subject property without adequate sanitation facilities, as determined by the County Health Department.

10)    The applicants shall provide a Development Agreement, to be reviewed and approved by County staff prior to recordation, and the Development Agreement shall be properly executed prior to the commencement of the approved kennel use on the subject property.

11)    The applicants shall be subject to the terms, conditions and commitments of record and in the file for Docket SU-01-12: Hallman House Kennel Special Use, including but not limited to allowing the dogs outside during the day and inside the kennel building in inclement weather and at night. The dogs will be supervised by at least one person, and any dog barking excessively will be fitted with a bark collar. If the barking continues, the dog(s) will be brought indoors.

12)    There shall be a review hearing with the Board of County Commissioners one year after the Development Agreement is recorded for this Special Use to determine compliance with the conditions, safeguards, and commitments of record. Subsequent review hearings may be set based on the first review hearing. Any violation of the conditions, safeguards, or commitments of record at any time shall be sufficient grounds for revocation of the Special Use, as noted in Section 4-602(B) of the County Land Use Code.

13)    The statutory vested right approved for the requested development / special use shall begin to run on the date of adoption of the County Commissioner Resolution, and shall be in effect for three years after the stated adoption date. The approved statutory vested right shall expire immediately at the end of this three-year period, unless expressly extended according to the applicable provisions of the County Land Use Code.

G\LUD\LUSHARED\DKTS\12BCREC.DOC

BCLU 1068
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-M-245 (BNB)