# SUMMARY REPORT

For

## HALLMAN HOUSE KENNEL FLOODWAY ENCROACHMENT

Boulder County, Colorado

18 November 2005

Prepared for:

**Boulder County, Office of the County Attorney**
1325 Pearl Street, 5th Floor
Boulder, Colorado 80306
Contact:        David Hughes

(303) 441-3190

Prepared by:

**Drexel, Barrell & Co.**
1800 38th Street
Boulder, Colorado 80301
Contact:        John Ewy, P.E.

(303) 442-4338

Job Number: E5584
(H:\E5684\Report\5684-Sum Rpt.doc)

**CA 7117**
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-cv-0245-RPM-BNB

## SUMMARY REPORT
HALLMAN HOUSE KENNEL FLOODWAY ENCROACHMENT
Boulder County, Colorado

### Table of Contents

| | |
|---|---|
| 1.0 **INTRODUCTION** | 1 |
| 1.1 LOCATION | 1 |
| 1.2 PURPOSE | 1 |
| 1.3 SCOPE | 1 |
| 2.0 **FLOODPLAIN MANAGEMENT PROGRAM** | 1 |
| 2.1 FLOOD INSURANCE PROGRAM (THE PROGRAM) | 1 |
| 2.2 BOULDER COUNTY LAND USE CODE | 3 |
| 3.0 **APPLICATION PROCESS SUMMARY** | 3 |
| 4.0 **CONCLUSIONS** | 4 |

CA 7118
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-cv-0245-RPM-BNB

## Attachments

VICINITY MAP ................................................................................. APPENDIX A

FIRM MAP ............................................................................... APPENDIX B

44 CFR, SECTIONS 59 AND 60 ............................................................. APPENDIX C

EXCERPTS FROM BOULDER COUNTY LAND USE CODE

SECTION 4 .................................................................................. APPENDIX D

FLOOD HAZARD ANALYSIS/COAL CREEK AND ROCK CREEK

 BOULDER AND WELD COUNTIES, COLORADO ............................... APPENDIX E

HARWELL HOUSE KENNEL SPECIAL USE/SSDP APPLICATION ...... APPENDIX F

BOULDER COUNTY DEPARTMENT OF TRANSPORTAION

APPLICATION REVIEW LETTERS........................................................ APPENDIX G

FLOWMASTER HYDRAULIC FLOODWAY CALCULATIONS ............ APPENDIX H

CA 7119
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-cv-0245-RPM-BNB

## 1.0    INTRODUCTION

### 1.1    LOCATION

The site of the proposed Hallman House Kennel expansion is located at 12401, 12416 and 12418 Flagg Drive in the Irvingston Addition of the town of Lafayette in Boulder County, Colorado. Coal Creek borders the property to the east. 6 buildings exist on site including two homes, two frame sheds, a frame barn, and a frame mobile home (See Appendix A). The existing buildings all fall within Zone AE (floodplain delineated with base flood elevations) on the National Flood Insurance Program's Flood Insurance Rate Map (FIRM) for Boulder County, Colorado and Incorporated Area's (See Appendix B). No floodway is indicated on the FIRM.

### 1.2    PURPOSE

The purpose of this summary report is to evaluate the conditional approval by the Boulder County Commissioners of the application for Special use/SSDP filed by Tynia Johnson et.al. for the expansion of the Hallman House Kennel. Specifically, this report addresses conditions related to the floodplain and floodway and recommendations by Mr. David Webster of the Boulder County Transportation Department as they relate to floodplain and floodway issues. To this end we have examined the regulations set forth by the Federal Emergency Management Agency (FEMA) regarding flood management practices within a community and how they were applied to the application review process. This evaluation included review of the hydraulic model used by Boulder County to determine the encroachment boundaries of the floodway as well as the model submitted to Boulder County by Tynia Johnson's representative.

### 1.3    SCOPE

Drexel, Barrell & Co. has based this report on FEMA's National Flood Insurance Program regulations under 44 CFR (see Appendix C), the Boulder County Land Use Code (see Appendix D) and information provided by the Office of the Boulder County Attorney.

## 2.0    FLOODPLAIN MANAGEMENT PROGRAM

### 2.1    FLOOD INSURANCE PROGRAM (THE PROGRAM)

Two acts of legislation form the basis of what is now known as the National Flood Insurance Program (NFIP). The National Flood Insurance Act of 1968 provided flood insurance to property owners in flood-prone areas who were previously unable to obtain such insurance from private companies. The Flood Disaster Protection Act of 1973 required the purchase of flood insurance in order to receive federal financial assistance for purchase or construction of insurable buildings and mobile homes that lie within special flood areas in a community participating in the Program. Section 59.2, paragraph (b)of 44 CFR states:

> "To qualify for the Program community's must adopt and submit to the [Federal Insurance] Administrator floodplain management regulations designed to reduce or avoid future flood, mudslide or flood related damage. These regulations must include effective enforcement provisions"

---

Summary Report                                                                      .1                                                              18 November 2005
Harwell House Kennel Floodway Encroachment                                                          Drexel, Barrell & Co.

**CA 7120**
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-cv-0245-RPM-BNB

Communities that fail to enforce their flood plain management regulations are put on probation from the Program by the Federal Insurance Administrator. During probationary periods property owners are able to keep or obtain new Federal Flood Insurance policies but with additional premiums imposed.

Communities that fail to correct deficiencies or remedy violations during the probationary period are suspended from their Program eligibility effectively preventing property owners from obtaining or continuing flood insurance policies in areas that are subject to flooding. This also prevents them from receiving federal financial procurement or construction related assistance on such properties per the Flood Disaster Protection Act.

FEMA delegates the responsibility of administration of the program to the individual communities but provides minimum criteria that must be included in the communities' flood plain management regulations. Section 60.1 paragraph (d) of 44 CFR also gives the communities leeway to impose stricter regulations than those in the base criteria:

> "The criteria set forth in this subpart are minimum standards for the adoption of floodplain management regulations by flood-prone, mudslide, (i.e. mudflow)-prone and flood-related erosion–prone communities. Any community may exceed the minimum criteria under this part by adopting more comprehensive floodplain management regulations utilizing the standards such as contained in subpart C or this part. In some instances, community officials may have access to information or knowledge of conditions that require, particularly for human safety, higher standards than the minimum criteria set forth in subpart A of this part. Therefore, <u>any floodplain management regulations adopted by a State or community which are more restrictive than the criteria set forth in this part are encouraged and shall take precedence</u>."

Under Section 60.3, Flood Plain Management Criteria for Flood-Prone Areas, FEMA provides the base criteria for various scenarios of information provided by the Flood Insurance Administrator to the communities (Section 60.3 paragraph (d):

> "When the Administrator has provided a notice of final base flood elevations within Zones A1-30 and /or AE on the community's FIRM and....has provided data from which the community shall designate its regulatory floodway, the community shall...select and adopt a regulatory floodway based on the principle that the area chosen for the regulatory floodway must be designed to carry the waters of the base flood, without increasing the water surface elevation of that flood more than one foot at any point."

In Boulder County the flood plain management regulations are contained in section 4 of the Boulder County Land Use Code (See Appendix D)

---

Summary Report                                    2                          18 November 2005
Harwell House Kennel Floodway Encroachment                        Drexel, Barrell & Co.

CA 7121
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-cv-0245-RPM-BNB

2.2    BOULDER COUNTY LAND USE CODE

Section 4, Floodplain Overlay District, of the Boulder County Land Use Code contains the regulations for floodplain management that Boulder County submitted to the Flood Insurance Administrator for eligibility in the Program. Article 4-401.A states:

> "The provisions and regulations of this section shall apply to all lands within the unincorporated area of Boulder County which are located within the Floodplain Overlay (FO) Zoning District."

The site of the proposed Harwell House Kennel expansion lies within the base flood area, or Zone AE, on the FIRM map for Boulder County. No floodway is indicated on this map but Boulder County has designated within its' regulations that the floodway encroachment limits have been calculated for this area and are contained in the hydraulic model used in the preparation of the report 'Flood Hazard Analysis/Coal Creek and Rock Creek, Boulder and Weld Counties, Colorado,' October 1976 (See Appendix E). This report was created using the "Floodway widths – HUD 15 Computer Program" developed by the Soil Conservation Service, which is a methodology accepted by the Flood Insurance Administrator for determination of a floodway.

The regulations go on to state in Article 4-403.A that:

> "No development, encroachment, use, or alteration in, on or over any part of the floodway shall be permitted which alone or cumulatively with other such uses would cause or result in the occupation of permanent or temporary structures [or] the potential of solid debris (including, but not limited to garages, storage sheds, decks, <u>fences</u>, etc) or waste (including, but not limited to septic systems, etc.) being carried downstream."

## 3.0    APPLICATION PROCESS SUMMARY

Ms. Tynia Johnson submitted an application for Special Use/SSDP, Subdivision Exemption and Road/Easement Vacation to the Boulder County Land Use department in August of 2001 (see Appendix F). The application proposed, among other things, two new structures and associated fencing. In October of 2001 the water resource engineer for the Boulder County Transportation Department, Mr. Dave Webster, submitted his recommendation to Boulder County Land Use Staff Planner Mr. Greg Oxenfeld that the application be denied on the basis of three issues (see Appendix G).

1. Proposed building 8 is located within the floodway and may not be permitted according to Article 4-403 of the Boulder County Land Use Code.

2. Proposed building 6 is located within the 500-year floodplain and would require a Building Permit.

CA 7122
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-cv-0245-RPM-BNB

3. Proposed fencing surrounding Building 6 lies within the 100-year floodway and would require a floodplain/floodway development permit.

In January of 2002 Ms. Johnson submitted a "Supplemental Application Materials for Hallman House Kennel" to the Boulder County Land Use Department. The revised application no longer showed Building 8 but included an additional buffer fence for noise control.

On February 13, 2002 Ms. Johnson's attorney, Mr. Ed Byrne P.C., submitted a letter to the Boulder County Department of Transportation regarding the fence issue relative to floodplain regulations. Also submitted were hydraulic calculations performed by Tynia Johnson's representative using Haestad Methods' "Flowmaster" hydraulic modeling program (see Appendix H).

On February 28, 2002 Mr. Webster submitted a recommendation (see Appendix G) to Mr. Oxenfeld that the application be denied on the basis that portions of the proposed fences lie within the 100-year floodway. Mr. Webster sites Article 4-403 of the Boulder County Land Use Code as well as FEMA's National Flood Insurance Program regulation in section 60.3 paragraph (d)(3). Mr. Webster also stated that the construction of the fence would require the issuing of "a floodplain/floodway development permit to the applicant as part of a variance to the floodplain regulations. In this case, the proposed encroachment on the floodway would require the applicant to hire an engineer and provide a floodway analysis of the improvements."

At a public hearing of Ms. Johnson's case before the Boulder County Commissioners, conditional approval of her application with the County was granted provided she submit a floodplain development application to show how she was going to meet the County's floodplain regulation or through the processing of a Letter of Map Amendment (LOMA) through FEMA. The subject property would be eligible for a LOMA if all or a portion of the property shown in the 100-year floodplain is actually above the floodplain base flood elevations. A LOMA application is processed through FEMA and is mostly an administrative process. Preparation of a LOMA by a registered engineer or surveyor would generally cost $2,000 to $3,000 to prepare. There is no application fee to process the information through FEMA.

Subsequent to the County hearing, Ms. Johnson prepared a LOMA application to FEMA for approval dated August 20, 2002. The application was to remove 10 buildings from the floodplain based on elevations of the lowest floor and lowest adjacent grade. The application was reviewed by FEMA and on September 18, 2002 FEMA issued a letter to Ms. Johnson requesting additional information. The letter gave Ms. Johnson 90 days to respond with the additional data needed for their review. Ms. Johnson did not respond and as a result, FEMA drop the review of the LOMA application.

## 4.0    CONCLUSIONS

It is the opinion of Drexel Barrel, & Co. that the Boulder Country Commissioners acted in accordance with both local and federal floodplain management regulations when they granted conditional approval of Ms. Johnson's Special Use/SSDP application.

CA 7123
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-cv-0245-RPM-BNB

Article 4-403 of the Boulder County Land Use Code clearly states that development resulting in solid debris, including fences, being carried downstream would not be allowed to occur within the 100-year floodway. Furthermore, Mr. Webster's determination of the floodplain encroachment limits on Ms. Johnson's property that placed the proposed fencing in the floodway were based approved and published data and were the result of sound engineering judgment.

By failing to vigorously enforce the county's floodplain regulations, Mr. Webster would have put the County's participation in the National Flood Insurance Program in jeopardy possibly resulting in probation or suspension from the Program. Probation would require higher premiums for all County residents located within the floodplain. Suspension from the Program would deny County residents of the opportunity to purchase flood insurance and would limit the amount of aid available to the County should a flood event occur.

The hydraulic computations submitted by Ms Johnson were not clear in their purpose and the "Flowmaster" program used to develop the model is not appropriate for the determination of the floodway because it does not take into account upstream or downstream aspects of the waterway. Typically, floodplain modeling is performed using programs utilizing a step-backwater method to compute water surface elevations through a studied reach. While the "Flowmaster" program may give a snap-shot of the water surface elevation at a particular cross-section, it does not have the ability to factor in the cumulative effect of upstream and downstream backwater conditions. Furthermore, the "Flowmaster" program is not able to model encroachments within the floodplain, which limits its effectiveness in accurately determining the limits of the floodway.

In Summary, it is the responsibility of the County Engineer to enforce the floodplain management regulations in the Boulder County Land Use Code uniformly across the community. Failure to demonstrate such enforcement could result in serious consequences to the County's participation in the NFIP. We believe the county's response to the Hallman House Kennel Expansion Application was justified based on the materials submitted to the County and based on the limited and the incomplete engineering response to the County's review comments.

Respectfully Submitted,

Drexel, Barrell & Company

Prepared by:

Deb Gallery

Reviewed and Edited by:

John A. Ewy, P.E., C.F.M.

COLORADO REGISTERED
JOHN ARTHUR EWY
31659
PROFESSIONAL ENGINEER

---

CA 7124
Johnson/Saint Cyr v. BOCC, et al.
Case No. 04-cv-0245-RPM-BNB